UNITED STATES *v.* HENRY PRENTISS & CO., INC.

No. 234. Argued December 8, 9, 1932.—Decided January 9, 1933.

*Assistant Attorney General Rugg,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,* and *Messrs. Whitney North Seymour, Sewall Key, John G. Remey, Joseph H. Sheppard, Erwin N. Griswold,* and *Wm. H. Riley, Jr.,* were on the briefs, for the United States.

*Mr. Joseph F. Murray,* with whom *Messrs. William P. Jeffery* and *Arthur Mattson* were on the brief, for respondent.

78

MR. JUSTICE CARDOZO delivered the opinion of the Court.

Respondent (the plaintiff in the court below) brought suit against the United States in a District Court to recover overpayments of income and excess-profits taxes for the years 1918 and 1920. The overpayments had come about, so it was claimed, from the undervaluation by the Commissioner of the respondent's invested capital, with a consequent exaggeration of the profits to be taxed. Two items or classes of property were the subject of the con-

troversy. In each year there has been an omission to include the full value of the real estate; indeed the parties have stipulated that the value of the real estate was greater by the sum of $46,371.08 than the sum allowed in the assessment. In each year also there had been an omission to include the value of intangible property, and particularly good will. The District Court held that there could be no relief in respect of either item for the year 1918 because the claim for refund filed with the Commissioner did not comply with the statute and the Treasury Regulations. In respect of both items, real estate and intangibles, relief was granted to the taxpayer to the extent of overpayments for the year 1920. The result was a judgment in favor of the respondent for $7,975.21. Cross-appeals followed to the Court of Appeals for the second circuit. Upon the taxpayer's appeal, the decision was that the defective refund claim for 1918 had been made good by amendment, and that the tax for that year, as well as for 1920, had been overpaid as to the real estate. Upon the government's appeal, the decision was that the item of intangibles should have been excluded for both years. 57 F. (2d) 676. A writ of certiorari, designed to bring up the ruling as to the amendment of the claim for 1918, was granted by this court on the petition of the government. No petition for a writ was submitted by the taxpayer.

On June 16, 1919, respondent filed its income and excess profits tax return for the year 1918, showing a total tax of $535,144.20, which it paid. On December 28, 1920, it paid for the year 1918 an additional tax of $119,191.19, as the result of an additional assessment, receiving back, however, $9,559.19 on the completion of the audit. Within the time prescribed by law there was filed with the Commissioner, on March 14, 1924, a claim for refund. In this claim, the respondent demanded the repayment of $200,-000. It stated in substance as the ground for this demand

that owing to abnormal conditions affecting its invested capital and income, there could be no fair computation of the tax by the appraisal of the cash value of its property in accordance with § 326 of the Revenue Act of 1918 (c. 18, 40 Stat. 1057, 1091, 1092, 1093), and that it should have the benefit of a special assessment under §§ 327 and 328.

Section 327 of the Act provides in subdivision (d) that the tax shall be determined in accordance with § 328 " where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in Section 328."

Section 328 provides in effect that in cases covered thereby the tax shall be computed without reference to the value of the invested capital and shall be determined by the ratio which the average tax of representative corporations engaged in a like or similar trade or business bears to their average net income.

The respondent's claim for refund, with the specification of the erroneous denial of a special assessment as the statement of its grievance, was filed, as we have seen, in March, 1924. On May 14 of that year, the respondent received from the Commissioner a letter acknowledging the filing and notifying the claimant of the procedure to be followed. " No consideration," it was there written, " may be given under the provisions of Sections 327 and 328 until statutory net income and invested capital are definitely determined. It is therefore necessary that you acquiesce in the net income and invested capital as shown in the revenue agent's report of March 25, 1920, for the

year 1918, or submit exceptions, if any, which you may take thereto. If exceptions are taken they should be presented in the form of an appeal prepared in accordance with the provisions of Treasury Decision 3492, a copy of which is enclosed."

The respondent does not assert that in response to this notice it took any appeal or filed any exceptions complaining of the assessment of capital or income. If any such document were in existence, it would have been equivalent to an amendment of the claim, and no doubt would be in evidence. What the respondent chose to do was obviously to acquiesce in the report that the cash value of the capital had been fairly ascertained, and to take its stand on the position that under §§ 327 and 328 its tax should be determined without reference to such value and in accordance with other methods both exceptional and discretionary. Accordingly the Commissioner proceeded to a consideration of the claim that error had been committed in failing to give the taxpayer the benefit of a special method of assessment. On July 16, 1925, the respondent was advised by written notice that there was no evidence of abnormal conditions sufficient to call for a departure from the usual forms of computation. The notice, signed by an acting deputy commissioner, closes with these words: " In accordance with the above conclusions, your claim will be rejected." To this is added a statement that the collector for the taxpayer's district will be officially notified of the rejection at the expiration of thirty days.

Notwithstanding this notice, the Bureau of Internal Revenue kept the proceeding open. Writing to the respondent on February 23, 1926, the Solicitor of the Bureau states that his office has before it for consideration the application for a special assessment of the taxes for 1918, and that " before a final decision is reached " the taxpayer " will be granted an opportunity to be heard

orally." If such a hearing is not desired, "the decision in the matter will be based upon the record as it now stands." In answer to that invitation the respondent requested an oral hearing, which it received, and also filed on April 8, 1926, a statement under oath, which, by concession, was equivalent in form to an amended proof of claim. In this statement the respondent put before the Commissioner the evidence both as to the undervaluation of the real estate and as to the exclusion of intangibles.* The Commissioner rejected the claim on September 3, 1926, by signing the rejection schedule.

We are holding in *United States* v. *Memphis Oil Co.*, decided herewith, *ante*, p. 62, that a general claim for refund, though irregular in form under the Treasury Regulations, may be amended after the period of limitation by specifying the grounds, if the amendment is made before final rejection. A statement, without explanation, to the effect that overpayments have been made in an aggregate amount is broad enough to cover any and all grounds for reassessment and return. This at all events is true where the basis of the grievance is that the tax has been erroneously computed even by the normal method—that there has been a deviation, in other words, from the statutory rule. Such is not the claim in controversy here. Here the taxpayer by its claim as originally presented abandoned the position that there had been any error of fact or law in the assessment of the tax according to the normal method, and planted itself on the position that the special method would be fairer. We are to say whether the ground thus deserted may be recovered by amendment.

---

* Certain forms of intangibles, for example, good will, are excluded in general from the definition of invested capital, but there are special conditions in which there is a duty to include them. Revenue Act of 1918, § 326, (4) and (5).

The act of the Commissioner of Internal Revenue in granting or refusing a special assessment under § 327 (d) of the Act of 1918 is discretionary and administrative, not subject to be challenged in any court, at least in the absence of fraud or other irregularities. *Williamsport Co.* v. *United States,* 277 U. S. 551, 562. Discretionary and administrative also is the review of his determination by the Board of Tax Appeals. *Williamsport Co.* v. *United States, supra.* If this amendment is permissible, a request for the exercise of a discretionary jurisdiction will have been turned after the running of the statute (Revenue Act of 1921, c. 136, § 252, 42 Stat. 227, 268; Revenue Act of 1924, c. 234, § 1011; 43 Stat. 253, 342; Revenue Act of 1926, c. 27, § § 284, 1113, 44 Stat. 9, 66, 116) into a claim of error of law or fact, and hence into a controversy within the jurisdiction of a court. What at the beginning was non-justiciable, with exceptions few and narrow (*Williamsport Co.* v. *United States, supra,* p. 562) will have become justiciable at the end.

An amendment so far-reaching, a metamorphosis so complete, may well be thought to destroy the identity of the claim or cause of action if the analogies of pleading in a lawsuit are to govern our decision. A declaration according to the common count for money had and received may be good though it does not tell us how the money was received or the use established. *United States* v. *Memphis Oil Co., supra.* This does not mean that a pleader who abandons the common count and states the particular facts out of which his grievance has arisen retains unfettered freedom to change the statement at his pleasure. All will then depend on the degree and kind of the departure. A cause of action alleging as a grievance that there has been a deviation from a rule of law or the breach of a legal duty in the collection of a tax is far apart from an appeal to an administrative officer to abandon the normal rule or method and substitute another, the substi-

tution being dependent upon administrative discretion. Overpayments there may have been in each case, yet in senses widely different. But the analogies of pleadings are not decisive of the controversy before us, wherever they may point and however helpful they may be. To make our conclusion sound, we must keep in mind also the necessities and realities of administrative practice. A demand for a special assessment in accordance with § 327 (d) of the statute of 1918 is not a challenge to any act of the Commissioner in the valuation of invested capital. On the contrary, the valuation of invested capital is irrelevant if the special method is accepted. The very basis of the application for the use of such a method is the presence of abnormal conditions whereby an unfair and disproportionate burden will be laid upon the taxpayer if invested capital is to be reckoned according to the statutory definition (§§ 325, 326) and the profits of the taxpayer subjected to a tax accordingly. Let the new method be adopted, and the value of the invested capital ceases to be a factor in the process. The taxpayer, it is true, may complain even then that there is a variance between such capital when restricted to the elements covered by the statute and invested capital when viewed as an economic concept, and that by reason of special conditions there should be an addition of other elements commonly excluded. See, e. g., J. H. Guild Co. v. Commissioner, 11 B. T. A. 914, 921. · Indeed that is the very reason why a special assessment becomes necessary. The fact remains, however, that the grievance does not grow out of a failure of the assessors to value the invested capital truly according to the statute. It has no relation, for example, to an assessment of tangible property, such as land or buildings, at less than the cash value. The grievance that will support an application for a special method of assessment under subdivision (d) of § 327 assumes adherence to the statute, and counts upon extraordinary conditions as justi-

fying a claim that the statute is oppressive. If the special method is accepted, the income of the taxpayer is considered without reference to capital as commonly determined, and the tax becomes proportionate to that of other representative corporations engaged in a like business.

A claim or cause of action will be ill-defined for the purpose of an administrative remedy if the definition gives no heed to the understanding or conduct of administrative officers. We are to ask ourselves how a request for a special method of assessment might be expected to be viewed or acted on by those required to consider it. The presentation of such a claim, unlike the presentation of a claim of error in fact or law, does not suggest the need for a new and general audit of assets and liabilities.* The two proceedings, alike in form and in consequences, are essentially diverse. By the very terms of the statute, § 327 (d), the special assessment is the outcome of a special application; it is made on motion of the taxpayer. A revision for error of fact or law, on the other hand, may be made by the Commissioner on his own motion, and indeed is commonly so made, for it is incidental to his general duty to audit the accounts. Upon an application for special relief—under subdivision (d)—there are no compensating adjustments favorable to the government that will move an examiner to reconsider the value of the tangibles, and make it either less or greater. *Lewis v. Reynolds*, 284 U. S. 281. He will conceive of the invested capital as deposited in a separate compartment which there is no need for him to open. Upon a claim of deviation from the statute, the taxable balance for the

---

* The range of investigation upon special applications is considered by Albert E. James, a former member of the Board of Tax Appeals in an article " Special Assessment Cases in the Courts and the Board," published in vol. 8, part 1, National Income Tax Magazine, 287, 289, 290, August, 1930. See, also, Investigation of Bureau of Internal Revenue, Senate Report No. 27, Part I, 69th Congress, 1st Session, p. 215.

year will be subject to re-audit as if the tax were laid anew. The grievances differ so essentially that the assertion of the one must be felt to be unrelated to any complaint as to the other.

The conclusion derived from the analogies of pleadings in a lawsuit is thus seen to be confirmed by the probabilities, if not the certainties, of administrative practice. If this is not enough, however, there is confirmation from other sources. In the pages of this record we find convincing evidence that by the understanding of the parties the claim for a special assessment was to exclude any claim for the revision of the value of the capital, and that no such claim would be pressed, at all events while the claim for a new method of assessment was alive and undetermined. We have seen that in May, 1924, the Commissioner of Internal Revenue gave notice to the taxpayer that there could be no consideration of the prayer for relief under §§ 327 and 328 of the applicable statute " until statutory net income and invested capital are definitely determined." The taxpayer was accordingly informed in conformity, it seems, with the usual practice of the department, that it would be necessary to do one or other of two things: to appeal from the report as to invested capital and income in accordance with a prescribed form, or to acquiesce in it. Cf. *Commissioner* v. *Ohio Falls Dye & F. Works,* 50 F. (2d) 660; *Norton Co.* v. *Commissioner,* 50 F. (2d) 664. The notice would tend to show, though assent to its requirements were lacking, that in the judgment of the men intrusted with the administration of the act, the two subjects of inquiry are diverse and independent. Coupled with the assent of the taxpayer, its significance is heightened. There is no suggestion that the taxpayer, when faced with this alternative, resorted to an appeal. In these circumstances its conduct in proceeding with its application for a special assessment was a tacit assent to the condition imposed by the Commissioner and

an abandonment of any objection that capital and income had been erroneously valued if valuation was to be ascertained according to the normal method. We have seen that an application for a special assessment involves an appeal by the taxpayer to the Commissioner's discretion. The application being of that order, a condition may reasonably be imposed that the inquiry shall be postponed until other and unrelated objections have been either determined or abandoned. There is room for argument that the taxpayer, having won the privilege of a hearing on those terms, is estopped from retracting its assent and resuming the abandoned ground. *Sturm* v. *Boker,* 150 U. S. 312, 333, 334; *Davis* v. *Wakelee,* 156 U. S. 680, 689. At least its assent is equivalent to an agreement that the claim for a special assessment shall be deemed to be a distinct one from that for a revision of the values. Retraction, if ever possible, must be held to be too late when the statute of limitations has interposed a bar.

The respondent complains of the ruling of the Court of Appeals whereby the value of intangibles was excluded from the invested capital for the year 1920 and the judgment of the District Court modified accordingly. The argument is that this court has jurisdiction in the exercise of its discretion to review those parts of the judgment adverse to the respondent, though no writ of certiorari was granted except to the petitioner, the government, nor was any other even asked for. We are not required at this time either to affirm or to deny the existence of the power that the argument imputes to us. If the power exists, the respondent has not persuaded us that our discretion should be moved to use it.

The judgment of the Circuit Court of Appeals should be reversed to the extent of the petitioner's objections thereto, and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*