## PACIFIC MILLS v. NICHOLS.
### No. 2897.

Circuit Court of Appeals, First Circuit.
July 17, 1934.

O. Walker Taylor, of Boston, Mass. (Israel Gorovitz, of Boston, Mass., on the brief), for appellant.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal by the plaintiff from a judgment for the defendant in an action brought to recover income and profits taxes for the year 1918. The District Court did not go into the merits of the controversy. It heard the case only on the defendant's plea that the action was barred by the statute of limitations applicable thereto. On the facts, about which there was eventually no dispute, the District Judge ruled that the action could not be maintained. The question before us is whether that ruling was right.

The taxes in question, amounting to $334,-822, were paid as part of a much larger sum ($7,649,283) on April 4, 1923. On March 14, 1924, a claim for refund was filed. It specified seven grounds of claim; each being stated in rather general terms and none of them claiming any specified amount. One of these grounds was that the claimant was entitled to relief by special assessment under sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093). To this claim the Commissioner answered under date December 30, 1924:

"Reference is made to the requests contained in your claims dated March 11, 1924, that your profits taxes for the year 1918 and 1919 be computed under the provisions of sections 327 and 328 of the Revenue Act of 1918.

"*Before consideration can be given your requests there must be a final determination of your net income for the years in question.* [Italics supplied.] It will, therefore, be necessary for you to advise this office within thirty days from the date of this letter of your acquiescence in the determination of the net income disclosed in Schedules 1 and 3, or exceptions, if any, which you may take thereto."

The plaintiff replied:

"Pacific Mills hereby agrees to the determination of net income for the years 1918 and 1919 as set forth in said letter namely $12,386,889.23 for 1918 and $7,109,921.35 for 1919, *for the purpose of determining the income and excess profits taxes for those years under the provisions of sections 327 and 328* of the Revenue Act of 1918." (Italics supplied.)

The Commissioner under date of December 18, 1925, rendered a decision denying

special assessment and giving his reasons therefor. His letter then continues:

"The tax liability for each of the years 1918 and 1919 as determined in Bureau letter dated December 30, 1924 is, therefore, sustained.

"In accordance with the above conclusions, your claim for the refund of $7,649,283.10 for the year 1918, will be rejected in full and your claims for the refund of $1,487,736.15 and credit of $90,624.21, aggregating $1,578,-360.36 for the year 1919, will be rejected for $1,485,603.46.

"The Collector of Internal Revenue for your district will be officially notified of the rejection at the expiration of thirty days from the date of this letter."

There the matter rested until March 26, 1927, when the plaintiff filed another claim for refund, the one now relied on, which was in effect a reassertion of the sixth item in its original claim. To this second claim the Commissioner made two replies. The first under date June 27, 1927, read as follows:

"Sirs: An examination of your claim for refund in the amount of $425,446.72, corporation income and profits taxes for the year 1918 has been made.

"The claim is based upon the contention that taxpayer's inventory should be valued at British Issue prices rather than at the figures fixed by the Department.

"Data submitted in connection with this claim does not substantiate taxpayer's contention for the reason that it is shown British Issue prices do not enter into taxpayer's inventory for the year 1918.

"You will be allowed ten days within which to submit other information. If no reply is received at the end of this time it will be presumed that you do not wish to pursue the matter further, and the claim will then be rejected on the next schedule to be approved by the Commissioner."

The second under date of August 26, 1927, was as follows:

"Sirs: An examination of your claim for refund in the amount of $425,446.72, corporation income and profits taxes for the year 1918 has been made.

"The claim is based upon the contention that taxpayer's inventory should be valued at British Issue prices rather than at the figures fixed by the Department.

"Data submitted in connection with this claim does not show that the corporation's source of supply would in any way justify the use of British Issue prices; moreover the Bureau has been consistent in its refusal to recognize British Issue prices as establishing market values of wool as at December 31, 1918.

"Inasmuch as no additional data has been submitted in reply to Bureau letter dated June 27, 1927 it is presumed that you do not wish to pursue the matter further.

"The claim will therefore be rejected and the rejection will appear officially on the next schedule to be approved by the Commissioner."

Final rejection in accordance with this letter was made on September 8, 1927.

The present action based on this last rejection was begun on September 3, 1929, i. e., more than five years after the payment of the tax and more than two years after the rejection of the original claim, but within two years after the rejection of the second claim.

The plaintiff contends upon certain technical grounds which we think it unnecessary to state that the government is prevented or estopped from raising the question of limitation by the form in which the pleadings were made and the evidence presented. The contentions are wholly without merit. The matter is jurisdictional, because the government can only be sued upon the terms and conditions which it imposes, and the point must be noticed when brought to the court's attention even if the pleadings are informal. Finn v. United States, 123 U. S. 227, 8 S. Ct. 82, 31 L. Ed. 128.

The statutes in question (Revenue Act of 1924, c. 234, 43 Stat. 253, 343) read as follows:

"Sec. 1014. (a) Section 3226 of the Revised Statutes, as amended, is amended to read as follows:

"Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of

filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail." USCA, title 26, § 156.

"Sec. 1012. Section 3228 of the Revised Statutes, as amended, is amended to read as follows:

"Sec. 3228. (a) All claims for the refunding or crediting of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as provided in section 281 of the Revenue Act of 1924, be presented to the Commissioner of Internal Revenue within four years next after the payment of such tax, penalty, or sum.

"(b) Except as provided in section 281 of the Revenue Act of 1924, claims for credit or refund (other than claims in respect of taxes imposed by the Revenue Act of 1916, the Revenue Act of 1917, or the Revenue Act of 1918) which at the time of the enactment of the Revenue Act of 1921 were barred from allowance by the period of limitation then in existence, shall not be allowed." USCA, title 26, § 157 and note.

It is clear that but for the filing of the second claim on March 26, 1927, the plaintiff's action is outlawed; no contention is made to the contrary. The ultimate question therefore is whether the filing of that claim operated to extend the period within which action might be brought. The District Judge ruled in effect that the second claim related to a matter which was included in the first claim and had been considered and decided by the Commissioner in connection therewith. He based his ruling on Altman & Co. v. United States (Ct. Cl.) 40 F.(2d) 781, in which it is said that the statute in question "manifestly does not contemplate the repetition of contentions for refund in such a way and at such times as to toll the running of the limitation period. The purpose of limiting suits to recover alleged illegal tax exactions is evident, and if plaintiff by repeating its contentions in two refund claims may establish jurisdiction to sue, despite the limitation prescribed in the law, litigation would be pro-

longed indefinitely. The act of the Commissioner in rejecting the second refund claim is without legal significance, for when it was filed and afterwards rejected plaintiff's right to sue had lapsed by limitation." Booth, C. J., page 784 of 40 F.(2d).

In the present case the Commissioner in fact never determined any questions raised by the first claim except one for special assessment. This appears from the correspondence. He said, as above quoted, "*Before consideration can be given to your requests*," etc. (Italics supplied.) This statement occurs in the letter accompanying the schedules showing what changes the Commissioner proposed to make in the plaintiff's income. Clearly those changes are not, as the government argues, and the District Judge in effect ruled, a decision on the claims. As appears by the plaintiffs' letters above quoted, it agreed to the Commissioner's determination of its net income for the years 1918 "for the purpose of determining the income and excess profits taxes for those years under the provisions of sections 327 and 328," etc. The acceptance was not unlimited and absolute. It was, as is clearly stated, made only for a specific purpose, and in order to obtain action on the claim for special assessment, under the ruling of the Commissioner. While we think he was not obliged to accept a conditional assent, he did so in this case, and considered it only under sections 327 and 328. It was therefore still open to the plaintiff to file a new claim covering the items not passed upon; the time for filing claims not having expired. Our attention has been called to no decision which holds that the making and the withdrawal of claims under such an assent operate to estop a party from renewing them within the period allowed by the applicable statute of limitations. Considering the procedural analogy of pleadings in a lawsuit, as was done in Bemis Bros. Bag Co. v. United States, 289 U. S. 28, at page 33, 53 S. Ct. 454, 77 L. Ed. 1011, there is no estoppel by judgment as to claims separable from those on which the plaintiff goes to trial and which are withdrawn before the case is tried. No such situation was presented in the case of United States v. Henry Prentiss & Co., 288 U. S. 73, 87–89, 53 S. Ct. 283, 77 L. Ed. 626, and, as the citations there relied on show, the court in its observations upon estoppel had in mind very different circumstances from those here presented.

The position which the government now takes was not relied on nor suggested by the Commissioner against the plaintiff's second

claim. He did not in any form say or suggest that the claim had been considered and decided, and could not therefore be renewed. On the contrary, he entertained it, considered it, offered to receive additional evidence on it, and finally denied it on the merits. If his decision had been in favor of the plaintiff, it cannot be doubted that he might legally have ordered a refund. It would be going a good way here to say, as was done in the Altman Case, that his second decision against the claimant was "without legal significance," for here the period of limitation had not run, at the time the second claim was filed, while there it had. It has been decided that the Commissioner has power to reopen and reconsider a claim within two years after it has been denied, and that, if he does so, the two-year limitation against the taxpayer runs from the Commissioner's final rejection of the claim. See Jones v. United States (Ct. Cl.) 5 F. Supp. 146, at page 152, and Youngstown Sheet & Tube Co. v. United States (Ct. Cl.) 7 F. Supp. 290, June 4, 1934, in which the facts seem to us more closely analogous to the present case than those in the Altman Case and the decisions were in favor of the taxpayers. The Altman Case is evidently to be limited to its particular facts.

In the present case, even if the Commissioner should be held to have decided every claim under the taxpayer's original petition, on March 26, 1927, when the second claim was filed, two years had not elapsed since the rejection of the first claim; it was still open to the plaintiff to sue on the denial of the first claim and to the Commissioner to reconsider his decision on the first claim and permit it to be amended and reheard. Jones v. United States (Ct. Cl.) 5 F. Supp. 146. In these respects the Altman Case differs from the one before us. Moreover, in the Altman Case the ground on which the second claim was based was identical with that of the first claim and had been considered and decided in connection therewith. In the present case, as above stated, that appears not to have been the fact.

The extreme construction of the statute for which the government now contends was at one time certainly not the view of the Department. The Solicitor of Internal Revenue held:

"Where an original claim for refund of a tax is made, alleging several separate and specific grounds for allowance, and demanding the full amount paid as such tax, which claim is rejected in toto, it cannot be reopened for consideration of a new and distinct ground, but claimant may make a new claim in the manner and form prescribed by the regulations, if the statutory period has not expired. * * * The language of section 3228, Revised Statutes, that all claims for the refunding of any tax must be presented to the Commissioner within four years next after payment of the tax sought to be refunded, may be construed to permit the filing of separate claims for refund of a single tax or portion thereof, so long as all the claims are filed within the four year period of limitations."

As is suggested in United States v. Memphis Cotton Oil Co., 288 U. S. 62, at page 66, 53 S. Ct. 278, 77 L. Ed. 619, and in Jones v. United States (Ct. Cl.) 5 F. Supp. 146, duplication of claims is largely within the Commissioner's control. If a second claim is filed covering only matters previously presented and decided, the Commissioner may in his discretion say so and refuse to entertain it. If he entertains the claim and considers it and decides it adversely to the claimant, we think suit may be brought within two years thereafter in accordance with the terms of the statute. This view opens no door to indefinite prolongation of litigation, as was suggested in the Altman Case, supra. No claim can be filed before the Commissioner more than four years after the payment of the tax, and an original claim may be filed at any time within that period.

The judgment appealed from must be reversed, and the case remanded to the District Court for further proceedings in accordance with this opinion.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion. The appellant recovers costs of appeal.