## ALLEGHENY HEATING CO. v. LEWELLYN, Former Collector of Internal Revenue.

### No. 6532.

District Court, W. D. Pennsylvania.
May 15, 1936.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

Chas. F. Uhl, U. S. Atty., and Orris Bennett, Asst. U. S. Atty., both of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

This is an action to recover a portion of income and excess-profits taxes paid by the plaintiff for the years 1917 and 1918. The question presented is whether or not the recovery of admitted overpayments of income and excess-profits taxes for the years 1917 and 1918 are barred by the statute of limitations.

Briefly stated, the facts stipulated are as follows:

"For the year 1917 plaintiff filed its return of income and excess profits tax on April 1, 1918, and the full amount of tax shown due, in the sum of $94,628.60, was duly assessed by the Commissioner

of Internal Revenue and paid on June 15, 1918. A claim for refund of $73,791.07 of the original tax reported and paid was filed on February 28, 1923, exactly fifteen days prior to the running of the five-year statute of limitations for filing refund claims. The claim was predicated upon two specific grounds; namely, that the taxpayer was entitled to additional depreciation, and that it should be affiliated with certain other corporations. In addition to the above grounds, the reasons for which were set out in more than two pages of single-spaced typewritten sheets, the taxpayer reserved 'the right to submit additional information and evidence in support of its claim as may be deemed necessary.'

"For the year 1918 taxpayer filed its return on April 11, 1919, and the full amount of tax shown due thereon was $182,965.59, which was duly assessed by the Commissioner and paid in four equal instalments. On March 15, 1924—the last day upon which a claim for refund could be filed under the applicable five-year limitation statute—plaintiff filed a claim for $45,000 of the tax so paid. This claim was specific and alleged that plaintiff should have been affiliated. No other ground was alleged or set forth.

"Subsequent to the filing of said returns and claims for refunds, as above set out, certain waivers were filed by the taxpayer which extended the period for assessment and/or collection of any tax for said years to and including December 31, 1927.

"On November 9, 1925, the Commissioner of Internal Revenue mailed to the taxpayer a so-called thirty-day letter advising it of a redetermination of its tax liability for the years 1917 and 1918 and for the period ending February 21, 1919, of a deficiency in tax for these years in the respective amounts of $5,979.96, $461.40 and $37,630.89, total, $44,072.25. In said letter the Commissioner of Internal Revenue advised the plaintiff that its claims for refund theretofore filed had been given careful consideration, and, in effect, held that it was not entitled to further depreciation or affiliation for either year.

"On November 25, 1925, plaintiff submitted a brief protesting 'the findings of the Income Tax Unit as set forth in its letter under date of November 9, 1925.' This brief was filed after the running of the five-year statute of limitations for filing claims for refund, and did not in any respect refer to the grounds set forth in the original claims. After stating the grounds of protest the plaintiff expressly reserved the right to file additional exceptions to the action of the Commissioner 'in increasing the taxpayer's income and profits taxes' for the period above mentioned. No mention was made of the claims for depreciation and affiliation originally filed.

"On January 16, 1928, plaintiff filed another protest brief which stated as follows:

"This is an application for the reconsideration of the findings of the Income Tax Unit as embodied in its letter dated November 9, 1925, showing the following:

| Year or Period | Deficiency |
|---|---|
| 1917 | $ 5,979.96 |
| 1918 | 461.40 |
| Period ending 2/21/19 | 37,630.89 |
| Total | $44,072.25" |

Neither protest brief was filed within the limitation period for filing claims for refund for the tax years 1917 and 1918, and in the second brief, the taxpayer—for the first time—requested relief under section 210 of the Revenue Act of 1917, c. 63, 40 Stat. 300, 307, and section 328 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1093.

On January 15, 1929, the Commissioner of Internal Revenue wrote the plaintiff with reference to the protest brief of January 16, 1928, and in substance stated that application for special assessment under said sections 210 and 328 of the Revenue Acts of 1917 and 1918, respectively, could not be allowed for the reason that no claim therefor was filed within the statutory period of limitation, but that his investigation had determined that plaintiff was entitled to this consideration, but on account of the running of the statute the granting of special assessment would be effective only in eliminating the deficiency in tax disclosed in the computation of its profit tax under the provisions of section 210 of the Revenue Act of 1917. In other words, that the overassessment determined in thirty-day letter dated November 9, 1925, which was the subject not only of appellant's protest brief of November 25, 1925, but also brief of January 16, 1928, would be entirely wiped out, and, in addition, result in an overassessment of the original

taxes reported and paid for the years 1917 and 1918, which, however, would be barred on account of failure to file timely claim for refund. Furthermore, the deficiency in taxes for the period January 1, 1919, to February 21, 1919, theretofore determined in the sum of $37,630.89 was reduced to $17,538.94. Based thereon the recomputation read as follows:·

| Year | Corrected Tax Liability | Tax Previously Assessed | Overassessment | Deficiency |
|---|---|---|---|---|
| 1917 | $ 79,420.85 | $ 94,628.60 | $15,207.75 (Barred) | |
| 1918 | 179,529.98 | 182,965.59 | 3,435.61 (Barred) | |
| Period January 1, 1919, to February 21, 1919 | 17,538.94 | None | | $17,538.94 |
| Totals | $276,489.77 | $277,594.19 | $18,643.36 (Barred) | $17,538.94 |

From the foregoing, it is seen that the deficiency of $5,979.96 for the year 1917 and the deficiency of $461.40 for the year 1918, and $37,630.89 for the period ending February 21, 1919, were completely eliminated, and barred overassessments were shown for the years 1917 and 1918— and a deficiency for the period ending February 21, 1919, in the sum of $17,538.94, rather than $37,630.89.

On account of the running of the statute of limitations, certificates of overassessments were not issued for the barred overassessments of the original tax, and plaintiff was never advised that it was entitled to these overassessments; but, on the contrary, the Commissioner was careful to inform the plaintiff that no certificates of overassessments could be issued on account of the running of the statute of limitations.

In a letter dated March 22, 1929, the Commissioner of Internal Revenue advised the plaintiff in detail why the said overassessments could not be scheduled for allowance. On March 20, 1929, the claims for both years were disallowed on a schedule of that date.

■■■ On these facts our conclusion is that the plaintiff's right to recover is barred by the statute of limitations. The original claims for refund were specific and related solely to taxes already paid. The protests of November 25, 1925, and January 16, 1928, relate solely to the elimination of the tax deficiency totaling $44,072.25; the respective amounts being $5,979.96 for the year 1917, $461.40 for the year 1918, and $37,630.89 for the period ending February 21, 1919. These protests were not directed to the refunding of any taxes that had already been paid, but were directed to the abatement of the proposed deficiency tax assessments. They are claims for the abatement of taxes proposed to be assessed rather than claims for refundment of taxes already paid. In addition to that, the protest finally filed by the plaintiff on January 16, 1918, which resulted in the elimination of the deficiency proposed to be assessed in the Commissioner's letter of November 9, 1925, raised an entirely new question than those raised in the original claims for refundment.

The plaintiff contends, under the authority of United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626; U. S. v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633; Bemis Bros. Bag Co. v. U. S., 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011, that these two protest briefs are in reality amendments of the original claims for refund. We cannot so hold, for as we construe the opinions of Mr. Justice Cardozo in these cases, the basic principle to be applied in the consideration of claims for refundment is this—that if, in the consideration of a timely claim, the Commissioner, in the normal course of administrative procedure, is led into the field covered by the purported amendment, the latter, if filed before rejection of the original claims, would be treated as a part of such original claim. That situation is absent from the instant case. We find nothing in the record which would link these protests to the original claims for refund. These protests present an entirely new basis of relief unrelated to the subject-matter of the original claims for refund. True, these claims for refundment were not finally disallowed by the Commissioner until these two protests had been filed and considered by the Commissioner; but that fact will not help the plaintiff in its endeavor to have these

protests considered as amendments to the original claim. There is a distinction in this case from the facts that appeared in the cases cited by the plaintiff in support of its position, in that the protests in the instant case referred to independent demands entirely unrelated to the claim for refund and the taxes sought to be refunded. In the Memphis Cotton Oil Company Case, supra, it was held that a timely claim based on general grounds might be amended by specifying particular claims relied upon after the statute of limitations had run and before rejection. In the instant case, the original claims enumerated specific grounds upon which recovery was sought. In the Factors & Finance Co. Case, supra, the original claim merely charged overpayment generally; and the courts held that such a claim brought within its range whatever facts reside in the domain of equity and conscience. However, in the Henry Prentiss & Co. Case, supra, the courts specifically held that a timely claim based on a specific ground might not be turned by amendment into one for revision of an assessment by increasing the value of real estate included in invested capital.

In the instant case, the 1917 claim is grounded upon depreciation and affiliation; the one for 1918 is grounded upon affiliation alone. The Commissioner, in his letter of November 9, 1925, ruled the taxpayer was not affiliated for 1917 and 1918. The protest brief filed in 1928 then asked consideration on the basis of special assessment, but this protest had reference only to the proposed additional assessment sought to be assessed in the Commissioner's letter of November 9, 1925.

■ In the case at bar we are not dealing with a situation before the statute had run, for the claim in controversy was not presented at all within the statute of limitations. True, acting on the request of the protest of 1928, the Commissioner proceeded with a recomputation of the tax on the basis of special assessment under sections 210 and 328, Acts of 1917 and 1918; but he at no time issued a certificate of overassessment, and upon completion of the recomputation advised the plaintiff he was without authority to do so after the statute of limitations had run, although this recomputation did service to wipe out the proposed additional tax mentioned in his letter of November 9, 1925. In addition to that

he wiped out almost two-thirds of the additional tax for the period from January 1 to February 1, 1919. It therefore follows that the plaintiff had all the relief that its protest briefs entitled it to.

The Court of Claims has specifically held that a protest against an additional assessment is in nowise the equivalent of a claim for refundment or an amendment thereto: Semmes Motor Co. v. United States, 67 Ct.Cl. 631; Feather River Lumber Co. v. United States, 66 Ct.Cl. 54, decided May 28, 1928; Stauffer, Eshleman & Co. v. United States, 66 Ct.Cl. 277, decided October 15, 1928.

The view we have expressed finds support in United States v. Richards (C.C.A.) 79 F.(2d) 797, certiorari denied, 297 U.S. 718, 56 S.Ct. 595, 80 L.Ed. 1003.

■ The plaintiff finally undertakes to prove the protest briefs filed within the statutory period of limitations by reason of having filed waivers. As we look at section 284 (g) of the Revenue Act of 1926, 44 Stat. 66, which provides as follows: "If the taxpayer has, within five years from the time the return for the taxable year 1917 was due, filed a waiver of his right to have the taxes due for such taxable year determined and assessed within five years after the return was filed, * * * then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed * * * on or before April 1, 1925. * * * If any such waiver so filed has, before the expiration of the period thereof, been extended either by the filing of a new waiver or by the extension of the original waiver, then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed * * * on or before April 1, 1926, in the case of credits or refunds relating to the taxes for the taxable years 1917, * * *" we find that the waivers filed by the plaintiff do not bring it within this statute. The waivers filed appear in the supplemental stipulations of facts as Exhibits I, J, K, L.

Considering the first waiver under date of the year 1917 to come within the provisions of the statute, it must have been filed on or before March 1, 1923. There is no evidence on the record that this waiver was in fact filed on or before that date. Of course, if it was so filed,

the provisions of section 283, 44 Stat. 63, do not apply. The original waiver was unlimited, but by the terms of the Commissioner's Mim. 3085, 11-1 Cumulative Bulletin 174, unlimited waivers for the year 1917 expired on April 1, 1924. The next waiver filed by the plaintiff on January 5, 1924, was within this period, and there is no break in the continuity of dates on which these two waivers were filed. However, when we come to consider the next waiver filed, presented November 13, 1925 (Ex. K. Stip.), there is a break in the continuity from March 15, 1925, to November 13, 1925. This break, of course, renders the provisions of section 284 (g) null and void, so far as they may be construed to extend the period of the statute of limitations. The last waiver, filed on September 29, 1926 (Ex. L. Stip.), extended the statutory period for assessment and collection until December 31, 1927.

The first protest relating to affiliation, depreciation and invested capital was filed on November 25, 1925, within the statutory period as extended by waivers, if we disregard the break in the continuity required by the applicable section of the Revenue Act.

The second protest, which for the first time raised the question of special assessment, and upon which the Commissioner acted to wipe out the proposed deficiency, was filed on January 17, 1928, after the statutory period extended by the last waiver had expired.

If the first unlimited waiver was filed prior to the expiration of the statutory period, we have the break in continuity between the filing of waivers designated as Exhibits J and K, and the last protest which brought about the Commissioner's action on special assessment was not filed until after the expiration of these waivers.

The burden of proof, of course, is on the plaintiff to prove that waivers which would bring it within the statute were filed. McDonald Coal Co. v. Lewellyn (D.C.) 9 F.(2d) 994.

Of course, the failure to file the waivers, or to produce proper evidence that they were filed, precludes recovery. Oxford Bank v. United States (Ct.Cl.) 44 F.(2d) 253; Hartford-Connecticut Trust Co. v. United States (Ct.Cl.) 58 F.(2d) 493; Hart Glass Mfg. Co. v. United States (Ct.Cl.) 48 F.(2d) 435.

On the whole case, therefore, we conclude that the protest briefs filed by the plaintiff were filed after the statute of limitations had expired, that they are not amendments of the original claim of refundment, and that they cannot be used as a basis for recovery in the instant case. An order for judgment for the defendant may be submitted.