JAIME FIGUERAS DOBAL, Complainant and Appellee, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Respondent and Appellant.

No. 10977. Argued February 1, 1954.—Decided March 2, 1955.

*José Trías Monge, Attorney General, (J. B. Fernández Badillo, Acting Attorney General on the brief) and José A. García Malpica, Assistant Attorney General* for appellant. *McConnell & Valdés* for appellees.

San Juan, P. R., March 2, 1955.

JUDGMENT

The judgment rendered by the San Juan Part of the Superior Court on March 18, 1953, in above-entitled case, is hereby affirmed.

It was so decreed by the Court as witness the signature of the Chief Justice.

A. C. SNYDER,
Chief Justice.

I certify:
IGNACIO RIVERA,
Secretary.

Opinion delivered by MR. JUSTICE BELAVAL in which MR. CHIEF JUSTICE SNYDER and MR. JUSTICE NEGRÓN FERNÁNDEZ concur.

On January 23, 1946, the complainant applied to the then Treasurer of Puerto Rico, now Secretary of the Treasury, for the refund of $267.15, alleging that a certain loss sustained in 1944 by the taxpayer in the final liquidation of his capital in a certain partnership was greater than the amount claimed in his income-tax return. After the corresponding investigation, instead of allowing or disallowing the refund in question the Treasurer of Puerto Rico notified him on December 15, 1949, of a tax deficiency for 1944 aggregating $2,561.37. The taxpayer requested reconsideration of the notice of deficiency and, after the administrative reconsideration prescribed by law, the Treasurer of Puerto Rico notified the taxpayer on January 25, 1950, of a final determination assessing a tax deficiency for 1944 aggregating $2,582.26. Feeling aggrieved by the decision

of the then Treasurer of Puerto Rico, on February 23, 1950, the taxpayer appealed to the former Tax Court of Puerto Rico.

In his complaint filed in that court, the taxpayer alleged that he did not claim in his 1944 income return the total loss sustained in the liquidation of his capital in the Mercantil Sociedad Roses & Cía., Sucrs. amounting to $15,563.07, and moved the court to set aside the decision of the then Treasurer of Puerto Rico assessing a deficiency and to order in turn the refund of the overpayment. In his answer, the then Treasurer of Puerto Rico alleged as a special defense that the court had no jurisdiction to allow the refund requested in the prayer of the complaint, inasmuch as no administrative action had been taken by the then Treasurer of Puerto Rico disallowing the refund. This special defense having been argued, on September 26, 1950, the former Tax Court entered an order overruling the special defense on the ground that it is "evident that the instant case involves a deficiency and not a refund." The then Treasurer of Puerto Rico amended his answer reproducing the same special defense. On March 18, 1953, the San Juan Part of the Superior Court rendered judgment setting aside the tax deficiency determined by the former Treasurer of Puerto Rico and ordering that officer to credit or refund to the taxpayer any income-tax amount overpaid in 1944. On March 31, 1953, the Secretary of the Treasury moved the court to amend the judgment in so far as it ordered that officer to refund or credit to the taxpayer any amount paid in excess because of the refusal of the then Treasurer of Puerto Rico to allow a loss of $15,563.07 for the taxable year 1944, alleging that the question involved was a correction of the deficiency and not a refund, wherefore the court, in ordering that any overpayment be credited or refunded to the taxpayer, had acted without jurisdiction since no administrative action had as yet been taken in the case by

the Secretary of the Treasury refusing to refund any sum overpaid by the taxpayer. On March 31, 1953, the Superior Court denied the motion to amend the judgment on the ground that the assessment of a deficiency to a taxpayer as a result of a claim for refund amounted, in fact, to an administrative decision rejecting such claim.

On April 2, 1953, the Secretary of the Treasury, in view of the pronouncement made by the Superior Court to the effect that the assessment of a deficiency amounted to an administrative decision rejecting a claim for refund, moved for reconsideration alleging that the court had acted without jurisdiction in view of the fact that, since the taxpayer had requested the refund on January 23, 1946, the tax deficiency had been tentatively notified on December 15, 1949, and the taxpayer had appealed to the Superior Court on February 23, 1950, the thirty-day jurisdictional limit, provided by Act No. 235 of May 10, 1949 (Sess. Laws, p. 732), to appeal from an administrative decision disallowing a refund, had long expired. On April 7, 1953, the Superior Court denied the reconsideration requested. On April 14, 1953, the Attorney General appealed from that part of the judgment rendered on March 18, 1953, and notified on March 20, 1953, "ordering the defendant to refund or credit to plaintiff any amount overpaid for the taxable year 1944, in view of defendant's refusal to allow a loss of $15,563.07 sustained in the liquidation of plaintiff's partnership interest in Sociedad Roses & Cía., Sucrs." It is well to state that the Superior Court determined that, as a matter of fact and of law, the loss sustained by plaintiff amounted to $15,563.07, which is the same amount alleged by the taxpayer, and that the Secretary of the Treasury did not appeal from that pronouncement, wherefore the case narrows down to a simple question of procedure.

The only assignment of error under consideration made by the Secretary of the Treasury is confined to requesting

this Court to declare that "the Superior Court of Puerto Rico acted without jurisdiction in rendering judgment in the case at bar, in so far as it orders the Secretary of the Treasury to refund or credit to plaintiff-appellee any tax for the year 1944."

The law applicable to the first aspect of this case, namely, the claim for refund made by the taxpayer on January 23, 1946, was § 64 of the Income Tax Act of 1924 (Sess. Laws 1925, p. 400), before it was repealed by Act No. 230 of May 10, 1949 (Sess. Laws, p. 706), which provided:

"Where there has been an overpayment of any income or excess-profits tax imposed by this Act, or by Income Tax Act No. 59 of 1917, Income Tax Act No. 80 of 1919, and Income Tax Act No. 43 of 1921, or any such Act as amended, the amount of such overpayment shall be credited against any income or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer.

"When a payment has been made of any income or excess-profits tax under the Income Tax Act No. 43 of 1921, as amended, for the calendar year 1924, or for any fiscal year ending in 1925, the amount of such payment shall be credited to any income or excess-profits tax when owed by the taxpayer pursuant to the provisions of this Act or of the acts hereinbefore amended in this subdivision or any amendment thereof, and any balance of such excess shall be immediately reimbursed to the taxpayer."

The law applicable to the second aspect of this case, namely, the determination of the deficiency notified on December 15, 1949, by the former Treasurer of Puerto Rico, was § 56 of the Income Tax Act of 1924, as amended by Act No. 136 of May 9, 1945 (Sess. Laws, p. 456), and § 57(a) of the Income Tax Act of 1924, as amended by Act No. 230 of May 10, 1949, which provided:

"Section 57(a).—If, in the case of any taxpayer, the Treasurer determines that there is a deficiency in respect to the tax levied by this title, the taxpayer, except as provided in subdivision (c), shall be notified of such deficiency by registered

mail, and the taxpayer may, within thirty (30) days following the date on which said notification was mailed, or within such extension of time as the Treasurer may grant to him for the purpose, apply in writing to the latter, for a reconsideration of and an administrative hearing on the matter, setting forth in his application the reasons he may have therefor. If the taxpayer does not apply for a reconsideration in the manner and within the term herein provided, or if after having applied for same the Treasurer should confirm in whole or in part the deficiency notified, the Treasurer shall in both cases notify the taxpayer by registered mail of his final decision, and the taxpayer may appeal from said final decision to the Tax Court of Puerto Rico in the manner, within the term and upon compliance with the requirements provided by law."

Regarding the procedural aspect of the reconsideration sought from the then Treasurer of Puerto Rico of the deficiency determined by himself, the same is governed by § 57(a) of the Income Tax Act of 1924, as amended by Act No. 230 of May 10, 1949, above copied.

Regarding the procedural aspect of the review of the administrative decision disallowing the refund and of the appeal from the final determination refusing to set aside or abate a deficiency, the law applicable on February 23, 1950, which is the date of the appeal taken by the taxpayer to the Tax Court, is § 2–A–1 and § 2–A–6 of Act No. 235 of May 10, 1949.

"Section 2.—*Taxpayer' Remedies:*

"A.—*Appeal from Decisions of the Treasurer of Puerto Rico.* —Whenever a taxpayer disagrees with a decision notified to him by the Treasurer of Puerto Rico and is by law entitled to appeal therefrom to the Tax Court of Puerto Rico, he shall do so in the manner, within the term, and upon compliance with the requirements herein provided, as follows:

"1. *Income Tax*

"From a final determination of a deficiency notified in the manner provided for in section 57(a) of the Income Tax Act of 1924, or from a final decision denying a claim in abatement, notified in the manner provided for in section 62(a) of said Act, by filing complaint in the Tax Court of Puerto Rico, in the

manner provided for by the law creating said court, within the term of thirty (30) days, from the date of mailing said notice of the final determination of the Treasurer of Puerto Rico, after giving bond in favor of the latter and before him, subject to the approval of said official, for the amount of the tax notified, plus interest computed for a period of one (1) year at the rate of six per cent (6%) per annum; *Provided, however,* That the taxpayer may pay that part of the tax to which he agrees and file complaint for the remainder in the Tax Court of Puerto Rico, in the manner aforesaid, upon giving the bond above mentioned, for the amount of the tax in litigation, plus interest computed for a period of one (1) year, at the rate of six per cent (6%) per annum; *And provided, further,* That whenever a final decision of the Treasurer of Puerto Rico denying a claim in abatement is appealed from, the taxpayer shall not be under obligation to give the bond required by this section, if the bond accompanying the claim in abatement guarantees, in the judgment of the Treasurer, the tax assessed, to its payment in full; *And provided, finally,* That both the term of thirty (30) days within which to appeal to the Tax Court of Puerto Rico, and the giving of the bond above mentioned, where such bond is required, within the said term of thirty (30) days, shall be considered of a jurisdictional character.

".     .     .     .     .     .     .     .

"6.—*Reimbursement of Taxes*

"From a decision of the Treasurer of Puerto Rico denying the reimbursement of any tax, by filing complaint in the Tax Court of Puerto Rico, in the manner provided for by the Act creating said court, within the term of thirty (30) days from the date of mailing the notice of the Treasurer of Puerto Rico denying the petition for reimbursement of the taxes, which term shall be considered of jurisdictional character."

Regarding the jurisdiction of the former Tax Court of Puerto Rico, the applicable law in force on February 23, 1950, is § § 2 and 3 of Act No. 328 of May 13, 1949, which provide:

"Section 2.—In addition to the jurisdiction therein vested by special laws, the Tax Court of Puerto Rico shall have exclusive jurisdiction to take cognizance of all cases, actions and proceedings, or special or extraordinary remedies, in connection with, or affecting, the levy, collection and payment of all kinds of

taxes, including property taxes, inheritance and gift taxes, income taxes, unfair profiteering taxes, social insurance taxes, excises, license taxes and any other taxes or imposts, as well as to take cognizance of claims for taxes collected by unlawful procedure or which voluntarily, or without notice from the Treasurer of Puerto Rico were paid unduly or in excess, the reimbursement of which is authorized by law and is refused by the Treasurer of Puerto Rico; *Provided, however,* That this jurisdiction may not be pleaded before the court by any person until there has been a proper administrative decision in the matter on the part of the Treasurer of Puerto Rico in accordance with law; *And provided, further,* That only the person bearing the burden of the tax or excise at issue may take an appeal to the Tax Court of Puerto Rico for the review of a denial of reimbursement of any tax or excise; and an allegation in this sense, and the evidence thereof at the proper time, shall be considered as requirements for jurisdiction; *And provided, finally,* That the Executive Council of Puerto Rico shall, until otherwise provided by law, continue to retain its authority and jurisdiction to take cognizance of all proceedings for the temporary tax exemption of new industries.

"Section 3.—All actions, remedies or proceedings to be substantiated before the Tax Court of Puerto Rico shall be instituted by complaint of the claimant person or entity, formulated by the claimant or through a duly authorized legal representative, within the term of thirty (30) days following the day of notice thereof, served by the Treasurer of Puerto Rico, in any of the following cases: (1) taxes on real or personal property; (2) inheritance or gift taxes; (3) income taxes; (4) unfair profiteering taxes; (5) social insurance taxes; (6) denials of reimbursements authorized by law of any kind of taxes paid unduly or in excess, or unlawfully collected for any other reason; *Provided, however,* That the filing of the complaint in the Tax Court shall not affect or impair the right of the Treasurer of Puerto Rico to collect the taxes by the procedure authorized by law, unless the Tax Court, upon motion of the taxpayer and after summoning the Treasurer of Puerto Rico, stays the collection of the tax at issue, upon the bonding, to its entire satisfaction, of the tax in controversy, including interest and penalties. The authorization to file this bond, as well as the fixing of the amount thereof, shall be a discretional and exclusive faculty of the court, having in mind in each case the facts and circum-

stances in its judgment concurring and affecting the interest both of the taxpayer and The People of Puerto Rico . . ."

For the discussion of this case, it is well to establish clearly that both the refund requested by the taxpayer, on which the Secretary of the Treasury alleges no administrative action has as yet been taken, and the deficiency assessed by the Secretary of the Treasury involve the same item within the same income-tax return, and that the elimination of the deficiency assessed by the former Treasurer of Puerto Rico would automatically result in the recovery of the amount overpaid. It will be recalled that the taxpayer claimed a loss of $12,740.45 instead of $15,563.07 in his income-tax return for the taxable year 1944. That loss represented the difference in a partnership interest worth $28,344.02 which the taxpayer inherited in 1935 while the partnership was in process of liquidation, and which, upon liquidation in 1944, netted only $12,780.95 to the taxpayer. When the claim for refund was made, the former Treasurer of Puerto Rico determined a statutory loss of $43,005.67 as sustained by the partnership from 1930 to 1944, to which he allowed a deduction of $2,874.33 as profits accumulated in an emergency fund; and, considering that complainant's share of the capital was 8.70557181 per cent, he determined a loss of $3,493.48 in that capital. The former Tax Court decided that the loss determined by the former Treasurer of Puerto Rico was erroneous, "in that such item is based on a statutory situation for the purpose of determining the income tax which the partnership was bound to pay, and not on the basis of the actual or business situation concerning the partners; furthermore, that for the purpose of arriving at the amount of $43,005.67 which the defendant considered as the statutory loss sustained by the partnership from 1935 to 1944, he erroneously failed to take into account the years 1930 to 1935, during which the partnership was also in process of liquidation." For that reason, the Secretary of the Treasury was ordered "to allow a loss of $15,563.07 when deter-

mining the income tax to be paid by plaintiff in 1944," on which amount plaintiff's claim for refund of overpayment was based.

Section 64 of the Income Tax Act of 1924, as it stood in 1946 when the claim for refund was made, vested the former Treasurer of Puerto Rico with power: (1) to credit the amount of overpayment to any income or excess-profits tax, or installment thereof then due, and (2) to refund immediately to the taxpayer any balance of such excess. It is evident that if no tax was due, as seems to be the case here, it was the former Treasurer's duty to refund immediately to the taxpayer the full amount of the overpayment.

When a petition for refund was made, the administrative practice, made necessary by the provisions of § 64, was (1) to audit the income-tax return involved in the petition for refund in order to determine the legality of the overpayment, (2) to examine the grounds on which petitioner's claim for refund was based, (3) to redetermine the petitioner's liability under the income-tax return involved in the claim for refund, and (4) to reaudit all income returns still pending in order to determine any further tax liability of the petitioner under other income-tax returns besides that involved in the reaudit. The refund of the overpayment was then ordered, depending on the fact of the legality of the overpayment, the veracity of the grounds adduced by petitioner, the redetermination of the tax liability under the income-tax return involved in the refund, and the showing that petitioner did not owe any amount for any account whatever on any other income-tax returns filed by him. This is what was involved in the so-called administrative decision disallowing the refund. Such administrative practice has been sanctioned by the authorities. *Lewis* v. *Reynolds*, 284 U. S. 281, 283, 76 L. Ed 293, 295 (McReynolds, 1932); *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, 70, 77 L. Ed. 619, 624 (Cardozo, 1933); *United States* v. *Prentiss & Co.*, 288 U. S. 73, 86, 77 L. Ed. 626, 632 (Cardozo, 1933); *United States ex rel. Girard T.*

*Co.* v. *Helvering,* 301 U. S. 540, 543, 81 L. Ed. 1272, 1276 (Stone, 1937).

In the discharge of his public duty to reaudit all income-tax returns which are still pending, the Secretary of the Treasury was vested with power to determine any deficiencies in the return involved in the claim for refund, or in any other returns filed by the taxpayer.

We are bound to assume that the administrative procedures prescribed by law have been followed, unless it is shown otherwise. The mere fact that a deficiency was assessed on the same item upon which the claim for refund was based, shows that the former Treasurer took action on the claim for refund, and that the only ground to reject it was the determination of such deficiency. The trial judge's reasoning is correct to a certain extent in that, since the assessment of the deficiency was a result of the claim for refund, such assessment amounted to an administrative decision on the claim for refund, for all purposes.

Regarding the notice served, the former Treasurer could have taken any of the following three steps: (1) to serve on petitioner notice of his administrative decision disallowing the refund on the ground that a deficiency had been tentatively determined; (2) to serve on taxpayer notice of his tentative determination of a deficiency found in the redetermination of the loss, on which action would be taken before the overpayment was refunded; (3) to serve on claimant notice of his administrative decision disallowing the refund as well as of his tentative deficiency determination.

However, in the instant case the former Treasurer only served one notice—of the final determination of the deficiency—and gave no notice of any decision disallowing the refund, even after reconsidering the tentative determination and holding an administrative hearing to make the final determination. The practical effect of such action is that the notification of the final determination of the deficiency is sufficient for the purpose of reviewing both the disallowance

of the refund and the final determination of the deficiency, since it involves the same issue where one action serves as a cause in another action. Although the best practice would always have been the dual notification, the fact that the Treasurer gave only one notice should not be prejudicial to the taxpayer, particularly in a case such as this, where neither the record nor the evidence presented in the Superior Court discloses that the former Treasurer had other reasons, besides the deficiency, determined as already stated, for disallowing the refund. It is well to recall that § 64 of the Income Tax Act of 1924 made it the duty of the former Treasurer to refund any balance *"immediately to the taxpayer,"* and that all determinations disallowing a refund shall be made in one single decision in order not to defeat the legislative intent. Should we take the view that the Secretary of the Treasury could determine one deficiency after another merely because he fails to serve timely notice of an express administrative decision denying the refund, the legislative intent would be doubly defeated.

The Secretary of the Treasury further bases his defense of lack of jurisdiction on the dissimilarity which existed at that time between the procedure to review the denial of the refund and the procedure to appeal to the Tax Court of Puerto Rico from the final determination of the deficiency. As stated before, when the taxpayer applied for refund of a certain overpayment on the ground that the loss deducted was less than the actual loss sustained, the former Treasurer proceeded to redetermine his 1944 tax liability. As a result of the reaudit, instead of allowing or disallowing the refund and giving notice to the taxpayer in order to enable him to appeal in due time from his administrative decision, the former Treasurer determined tentatively a deficiency on the same item as the one involved in the overpayment. The taxpayer requested and was granted reconsideration and an administrative hearing in connection with the said tentative determination. After the hearing and some minor adjust-

ments, the former Treasurer notified him of the final determination of the deficiency on the same and only item involved in the claim for refund. The taxpayer appealed from this final determination within thirty days to the former Tax Court of Puerto Rico. The Secretary of the Treasury now contends that, since under § 57(a) of the prior Income Tax Act of 1924, as amended by Act No. 235 of May 10, 1949, an appeal from an administrative decision shall be taken within thirty days from the notice given by the former Treasurer of Puerto Rico of his administrative decision, and since under said section the appeal from the deficiency shall be taken within thirty days from the notice served by the former Treasurer of the final determination made upon reconsideration, assuming that the notice of the tentative determination of the deficiency amounts to a notice of the administrative decision of the refund, the taxpayer who appeals only from the final determination of the deficiency cannot appeal at the same time from the administrative decision disallowing the refund, since the thirty days granted by law to the taxpayer to appeal from the administrative decision disallowing the refund would have expired. This would be correct if the former Treasurer had served separate notices of the disallowance of the refund and of the final determination of the deficiency. But since he failed to do so, we are compelled to inquire into the actual effect of the omission of some of his functions, as prescribed by law, when a claim for refund is made, having reached the conclusion that, where in answer to a claim for refund the former Treasurer merely assesses a deficiency on the same item on which the alleged overpayment is made, the court has authority, when passing upon the deficiency and in the absence of other reasons, to order the refund. One thing is the diversity of appellate proceedings and another thing is the power of a court to order, within a litigious question submitted to it, any remedial measure to avoid the vicious relitigation of an issue wholly submitted to its consideration.

The judgment appealed from will be affirmed.

Mr. Justice Marrero, Mr. Justice Sifre, and Mr. Justice Pérez Pimentel concur in the result.