## SEIBERLING et al. v. UNITED STATES.
### No. 42094.

Court of Claims.
March 7, 1938.

398

402

[redacted]

Francis R. Lash, of Washington, D. C. (Fred A. Woodis, of Washington, D. C., on the briefs), for plaintiffs.

John A. Rees, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The original petition in this tax case was filed by Harry C. Trexler, the taxpayer. On November 14, 1933, Harry C. Trexler died testate, and the present plaintiffs are the duly appointed and qualified executors of his estate. The suit is for the recovery of alleged overpayments of income taxes for the calendar year 1918.

The findings of fact chronicle the transactions in accurate detail. The issues involved preclude the necessity of repeating them at length in this opinion. The plaintiffs insist that Harry C. Trexler, now deceased, was entitled to have his net taxable income for the calendar year 1918 determined upon the following basis: First, determine the net income of the partnership of which he was a member; deduct therefrom the excess profits tax of the partnership, and thus determine the distributive share of partnership profits due the partner. Second, credit against the net income of the partner his proportionate share of the excess profits tax paid by the partnership, and thereby to this extent obtain the partner's correct net income for tax purposes.

The contention advanced arises out of the fact that Harry C. Trexler was a member of the partnership firm known as the Trexler Lumber Company, of Allentown, Pa. The partnership and the partner's returns were adjusted by the Commissioner and the ascertainment of the distributive share of the partnership profits due the partner was not officially and finally determined until 1929 and 1930. This fact is conceded.

A defense interposed, which we think is sufficient to dispose of the case and make unnecessary a consideration of the principal issue advanced by plaintiffs, relates to three refund claims, the first one filed by the partner on June 10, 1924, within the statutory limitation prescribed by the applicable revenue law, and the two remaining ones filed May 17, 1928, each of which is admittedly barred by the statute of limitations for filing refund claims to the extent of the recovery sought unless it may be held that they are simply amendments of the timely claim of June 10, 1924.

Harry M. Trexler's individual income tax return for the calendar year 1918 was filed March 28, 1919. The return disclosed a tax liability of $123,784.31, which was paid in installments. The gross income of the partner stated in the return included an item of $405,132.63 as the taxpayer's proportionate share of the profits of the partnership of the Trexler Lumber Company. The above return was later amended by the taxpayer increasing his tax liability $9,685.93 and paying the additional tax thereon.

In the return of March 28, 1919, as well as in the amended return of the taxpayer, he did not take or claim as a credit against his net income shown his proportionate share of the excess profits tax paid by the Trexler Lumber Company, although such tax was deducted from the partnership's net income in determining the taxpayer's proportionate share of the profits of the same.

The Trexler Lumber Company filed its income tax return April 30, 1918, for the fiscal period of 11½ months beginning March 16, 1917, and ending February 28, 1918. This return reported an excess profits tax of $125,635.32 and $405,132.63 as Henry M. Trexler's distributive share of the partnership profits after deducting the profits tax from the partnership's net income.

The first examination and audit of the partnership's return by the Commissioner disclosed an overassessment of $21,849.62 due to an adjustment of excess profits tax liability, and this amount was subsequently refunded. Later, in 1923, an additional ex-

amination and audit were made of both the partnership's and Harry C. Trexler's returns for 1918. This examination and audit disclosed a net additional tax due from each taxpayer. In the case of Harry C. Trexler the amount was $12,373.41.

The Commissioner's recomputation of the additional income tax due from Harry C. Trexler was based chiefly upon the recomputation of the income of the Trexler Lumber Company, and the two partners affected thereby, i. e., Harry C. Trexler and Fred H. Sterner, protested against the revenue agent's report upon which the Commissioner acted, and requested that further action upon their individual returns be held in abeyance until the final disposition of the Trexler Lumber Company's return. Later both the taxpayer and the partnership filed appeals to the Commissioner against the proposed additional tax.

Notwithstanding the noted protest and appeals, the Commissioner, on May 14, 1924, assessed against Harry C. Trexler a deficiency tax of $12,373.41 for the calendar year 1918, and it was paid by the taxpayer on May 29, 1924. It is to be noted at this point that the Commissioner, in computing the additional tax liability of the individual partner, did not depart from the method previously adopted, i. e., with respect to manner of treating deductions of the excess profits tax from the partnership's net income to ascertain the distributive share of individual partners in partnership profits.

On June 10, 1924, Harry C. Trexler filed his first refund claim. The taxpayer in this claim sought the refund of the additional tax of $12,373.41 and such additional sums as might be refundable, and predicated his right thereto upon a statement that a matter "affecting the income of the Trexler Lumber Company" was pending before the Commissioner, and the final determination with respect thereto "will reduce or entirely wipe out the above stated tax liability." (Finding 10.)

Appended to the above refund claim was a copy of the appeal of the Trexler Lumber Company then pending before the Commissioner, and the contents of the copy disclose that the appeal of the partnership for relief from a deficiency assessment was predicated exclusively upon a claimed deductible loss of an abandoned asset of the firm, the Commissioner determining the loss in the taxable fiscal year of 1917 and the partnership insisting upon its right to have it deducted in the next succeeding year.

January 19, 1926, the Commissioner mailed a deficiency notice to the partnership showing his action on the protest or appeal, a recomputation of the partnership's net income, and the determination of a deficiency against the partnership. In the same letter the Commissioner indicated that the returns of the individual partners, including the taxpayer herein, would be adjusted in conformity therewith. At or about the same time the Commissioner acted upon Trexler's refund claim, making adjustments consistent with the foregoing partnership determination and allowing the claim in the sum of $42.84, which amount with interest was duly paid.

The Trexler Lumber Company April 22, 1926, appealed to the Board of Tax Appeals from the Commissioner's determined deficiency and subsequently the matter was considered by the special advisory committee of the Commissioner's office. A stipulation was finally reached by the parties on the basis of which the Board of Tax Appeals entered its final order of a deficiency November 9, 1927. A deficiency of $26,046.54 was duly assessed against the partnership by the Commissioner as a result of that determination.

May 17, 1928, Harry C. Trexler filed with the collector of his district two refund claims. One had been subscribed on May 8, 1928, the other May 15, 1928. The claims reached the Commissioner in due course. The refund claim of May 15, 1928, after reciting the imposition of the deficiency assessment by the Commissioner of May 14, 1924, and the payment of the tax on May 29, 1924, set up for the first time as the grounds for the allowance of the claim the fact that the Commissioner in determining the taxpayer's taxable net income had not first credited against his net income his proportionate part of the excess profits tax collected from the Trexler Lumber Company.

The refund claim further stated that it should be considered "as perfecting an informal one previously filed and as amending and further supporting the formal refund claim heretofore filed." The refund claim of May 8, 1928, was substantially the same as the second in the above respect.

Following the decision of the Board of Tax Appeals upon the appeal of the Trexler Lumber Company heretofore mentioned, the Commissioner referred the refund claim of Harry C. Trexler subscribed on May 15, 1928, to a revenue agent for ex-

amination and a report. The agent's report subsequently made set forth a detailed computation of the taxpayer's tax liability showing an overpayment of taxes for the calendar year 1918 of $56,883.99 and also showing that of this amount only $12,373.-41 was legally refundable to the taxpayer.

The Commissioner adopted the report of the revenue agent and allowed the refund claim to the extent of $12,373.41, that is, the tax paid by Trexler within four years of the filing of the claim for refund on May 17, 1928, but refused to allow the balance of the overpayment shown in the revenue agent's report, namely, $44,510.58, on the ground that under section 284 (b) of the. Revenue Act of 1926, 44 Stat. 66, the refund claim was not timely as to the latter amount. This suit is for the recovery of that balance of $44,510.58 and interest.

No dispute exists as to the applicable sections of the revenue laws. We need not cite them. Section 29 of the Revenue Act of 1916, as added by Revenue Act 1917, § 1211, 40 Stat. 337, with respect to the excess profits tax, provides as follows: "That in assessing income tax the net income embraced in the return shall also be credited with the amount of any excess profits tax imposed by Act of Congress and assessed for the same calendar or fiscal year upon the taxpayer, and, in the case of a member of a partnership, with his proportionate share of such excess profits tax imposed upon the partnership."

Until February 4, 1927, when Treasury Decision 3971 was promulgated, the Commissioner had ruled that a partnership excess profits tax paid by it should be deducted from the partnership's net income in determining the pro rata distributive share of partnership profits accruing to individual partners, and that no further credit should be allowed the individual partners on their returns for their pro rata share of the excess profits paid by the partnership.

In computing the tax liability of the original taxpayer in this case, the Commissioner followed his established rule under Treasury Decision 3971 in making the final computation which exhibited the overpayment noted. Treasury Decision 3971 was promulgated because of the decision of the Circuit Court of Appeals in the case of Reid v. Rafferty, 2 Cir., 15 F.2d 264, which reversed a decision of the District Court in the same case which had sustained the action of the Commissioner (4 F.2d 749), the Circuit Court of Appeals holding that under the applicable sections of the revenue law an individual partner in determining his income tax liability may credit net income with his proportionate share of excess profits tax paid by the partnership.

Under the above decision the one factor which the Commissioner held precluded the refund of the tax sought to be recovered herein was the statute of limitations applicable to the time within which refund claims may be filed. The refund of $12,-373.41 and interest thereon made by the Commissioner subsequent to the promulgation of Treasury Decision 3971 which embodied the changed procedure in accord with the decision of the Court of Appeals was made under a determination by the Commissioner that the refund claim of May 17, 1928, was timely only as to the payment made May 29, 1924, and did not reach payments made prior to 1924.

The brief of plaintiffs sets forth four contentions justifying a recovery under the facts and law. It is first insisted that the refund claim of June 10, 1924, was itself sufficient to require the Commissioner to refund the tax involved in this case. The argument in support is rested upon the relationship of the individual partner to the partnership and the obvious inability to determine the individual partners' tax liability until the partnership's tax liability had been determined.

The individual partner in his income tax return for the calendar year 1918 returned as income his distributive share of the partnership profits and paid the tax returned as due. The Commissioner had nothing to do with this return until it reached him. The audits and adjustments later made by the Commissioner with respect to this return were made in part because of audits and adjustments made in the partnership's return, and additional facts not related to the partnership.

It is said the Commissioner vacillated until 1927 in his treatment of crediting the excess profits tax paid by the partnership in determining the tax liability of both the partnership and individual partners. It may be true that in certain instances he did not adhere strictly to a certain form of computation, but it is clear from the record that the result was precisely the same so far as the taxpayers were concerned.

The refund claim of June 10, 1924 (Finding 10), contains no reference whatever to an excess profits tax and its ef-

fect upon the taxpayer's tax liability. Previous to the date of its filing the taxpayer had paid a deficiency assessment, and the partnership had appealed from a contemporaneous deficiency assessment upon the grounds that the Commissioner had improperly reduced its net income "on account of a loss alleged by the revenue agent to have been sustained * * * in the liquidation of the Prentiss Plant." The Prentiss Plant had admittedly been abandoned and the issue raised was restricted to the correct year of its abandonment.

This appeal to the Commissioner, as well as the subsequent one to the Board of Tax Appeals, did result in a reduction of the deficiency disclosed in the Commissioner's 60-day letter of January 19, 1926, and manifestly called for a readjustment of the individual partner's taxable net income. The controversy, however, was not over the manner 'in which the excess profits tax had been treated in determining the distributive shares of the partners. The case of Reid v. Rafferty, supra, in the District Court was decided March 3, 1925, and, as previously noted, sustained the Commissioner's treatment of crediting excess profits taxes paid by a partnership, and in addition this controversy with the Trexler partnership was wholly over the correct net income of the partnership.

The record of facts, not susceptible to contradiction, shows that it was not until May 17, 1928, after the decision of the Circuit Court of Appeals in the case of Reid v. Rafferty, supra, decided on November 3, 1926, that the original taxpayer in this case contended for a credit against his net income of his pro. rata share of the excess profits tax paid by the partnership. It was not until May 9, 1930, that the individual partner submitted a brief upon this issue to the Commissioner.

The various examinations, audits, adjustments, and readjustments of the return of the original taxpayer in this case until the final one did not involve the right of the taxpayer to the credit herein claimed. No suggestion emanated from any contention of the taxpayer indicating a dissatisfaction with the Commissioner's treatment of the tax liability of the taxpayer so far as the excess profits taxes were involved until the claims were filed May 17, 1928. The entire subject matter of readjustments on the basis of the earlier claim of June 10, 1924, was restricted to the allowance of a loss by the partnership of an abandoned asset which when determined would affect the individual partner's tax liability.

▪ We are unable to perceive where the argument that the first refund claim was pending and unrejected when the taxpayer filed his second and third refund claims, alleging specific claims for their allowance, supports the plaintiffs' case. In the recent case of United States v. Andrews, 58 S.Ct. 315, 319, 82 L.Ed. ——, the Supreme Court said: "It was," speaking of the original refund claim, "as specific as it could be made and pointed unerringly to the items the Commissioner must consider."

The taxpayer having chosen to rest his right to a refund upon the adjustment of the tax liability of the partnership, a matter then pending and involving only the loss of an abandoned asset of the partnership, did not, and obviously did not intend to, challenge the treatment the Commissioner applied in the matter of crediting excess profits taxes to either the net income of the partnership or the individual partner.

▪ Without challenging the right of the taxpayer to avail himself of the decision of the Circuit Court of Appeals in the case of Reid v. Rafferty by a timely refund claim, or by an appropriate amendment of a timely one previously filed, it is, we think, too late to raise the issue when it was available to the taxpayer when he filed his timely refund claim. One cannot acquiesce in a determined procedure of the Commissioner in ascertaining a tax liability of a taxpayer and then, after this procedure is held to be contrary to law, amend a specific refund claim in such a way as to bring his rights within the decided case, when it is too late to do so, and especially when the belated refund claim sets up a new ground for its allowance.

The question as to the allowance to an individual partner of his pro rata share of excess profits paid by the partnership as a credit against his net income was during this entire controversy one subject to judicial determination. The plaintiffs' original taxpayer did not raise the issue in his first refund claim. It was finally raised by another taxpayer in whose favor it was decided, and nothing appeared in the first refund claim to even suggest such an issue to the Commissioner.

We think this case falls within the decision in the following cases: Johnson v. United States, 1 F.Supp. 778, 3 F.Supp. 544, 76 Ct.Cl. 360; United States v. An-

drews, supra; United States v. Garbutt Oil Company, 58 S.Ct. 320, 82 L.Ed. ——, and the petition is dismissed. It is so ordered.