**EDWARDS v. MALLEY, former Collector, and three other cases.**
Nos. 3397–3400.

Circuit Court of Appeals, First Circuit.
Feb. 7, 1940.

Claude R. Branch, of Boston, Mass. (Edmund S. Kochersperger, of Washington, D. C., and Charles Ryan, of Boston, Mass., on the brief), for appellants.

Wm. B. Waldo, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellee.

Before WILSON and MAGRUDER, Circuit Judges, and McLELLAN, District Judge.

MAGRUDER, Circuit Judge.

These suits were begun at various times in 1935 and 1936 to recover alleged overpayments of individual income taxes for the year 1917, resulting from the failure of defendant to credit against the net income of each of four partners his proportionate share of the excess profits tax imposed upon the partnership for that year (Section 1211, Revenue Act of 1917, 40 Stat. 337). On the face of it, this lapse of time would be expected to put some strain on the statute of limitations. We hold, with the District Judge, that the strain is more than the statute will bear.

By stipulation the cases were consolidated for trial, which was had before Sweeney, J., without a jury; and in each case judg-

ment was entered for defendant. For the sake of simplicity we shall refer only to the facts in No. 3397, the separate cases containing no significant variation of facts.

On June 12, 1918, Francis Willey & Company, a partnership composed of Harold S. Edwards, F. Vernon Willey, Francis Willey, and John Wilcock, paid its excess profits tax for the calendar year 1917, in the sum of $737,251.75. On June 6, 1918, Harold S. Edwards paid his individual income tax for the year 1917 in the sum of $79,651.80. The partnership income return for 1917 gave $220,283.45 as the distributive share of each partner in the firm net income. This figure was arrived at by deducting from the firm net income the excess profits tax payable for that year and prorating the balance equally among the partners. Edwards carried over into his individual income tax return the figure of $220,283.45 as his share of the firm income. But it is to be noted that on this return Edwards did not also deduct from his individual net income his share of the partnership excess profits tax. Not until 1929 did Edwards claim to be entitled to the benefit of this double deduction.

After filing his income tax return for 1918, Edwards filed an amended 1917 return, and a claim for credit which he asked to be applied on his unpaid assessment for the year 1918. This claim for credit stated:

"The amount of overpayment of $12,902.-50 is shown by the amended return I have filed for the calendar year 1917. The amount of interest I received on my share of capital in Francis Willey & Co. was included twice in the original return. The amended return makes the proper correction and shows that I made an overpayment in 1918 for the return of the calendar year 1917 of the above amount mentioned $12,902.50."

The claim of duplication as to interest was meritorious. Before the determination of the equal shares of the four partners in the partnership income a deduction should have been made for an item of over $100,-000 for interest paid in various amounts to the partners on their respective capital contributions. The returns disclose that this was not done; and that at the same time each partner charged himself with an additional item of income denominated "interest" received by him on account of his capital contribution to the firm.

Meanwhile, the partnership in May, 1918, filed an amended excess profits tax return for 1917 and in November, 1920, a large additional excess profits tax was assessed against it for the year 1917. The partnership thereupon, on January 13, 1921, filed a claim for abatement on the ground that certain salary deductions had been erroneously disallowed by the Commissioner. The amount of the partnership net income for 1917, and of its excess profits tax due thereon, was thus thrown open for recalculation, which would call for reciprocal corrections on the individual returns of the partners in respect of their distributive shares of the partnership income. Accordingly, Edwards on December 12, 1922, filed a timely claim for refund, from which the following is quoted:

"Harold S. Edwards, the above named taxpayer, was a member of the copartnership of Francis Willey & Company during the taxable year 1917, and filed a return which included his share of the partnership profits for that year.

"The Department, through Revenue Agent Costello, in the year 1920 examined the partnership returns and filed a report with the Commissioner in Washington on the result of his examination. The Revenue Agent's report was audited in Washington and certain controversies have arisen between the partnership and the government relative to the amount of the net income of the partnership and the amount of the excess profits tax.

"Until these controversies are determined, it is impossible for said Harold S. Edwards to determine the exact amount of over-payment of the 1917 tax which he believes has been made. In order, however, to preserve his rights and secure the benefits granted to him by Sections 252 and 1318 of the Revenue Act of 1921, this claim for refund is filed and claim is made for the refund of the entire amount of the tax paid for the calendar year 1917.

"It is respectfully submitted that no action should be taken on this claim until the Department has determined the excess profits tax of Francis Willey & Company, for the reason that Harold S. Edward's share of the partnership profit is directly dependent upon the determination of the excess profits tax of the partnership."

Though this claim for refund is now described by counsel for the taxpayer as "general and protective", it is clear that the legal basis for the claim is very specific. The partnership was facing an additional assessment for excess profits taxes; whatever that additional assessment might prove

to be would presumably be excluded from the partnership income distributable to the partners (as had been done on the original return); hence Edwards asks that his claim for refund remain in abeyance until the partnership excess profits tax had been determined, for his *"share of the partnership profit* is directly dependent upon the determination of the excess profits tax of the partnership."  No intimation was conveyed that Edwards was entitled to the benefit of a double deduction on account of this item.

Thus, at this time Edwards had two claims pending—one in form a claim for credit and the other in form a claim for refund—but both claims asked for adjustment of the same item, the distributive share of Edwards in the partnership net income.

On March 6, 1923, the Internal Revenue Agent at Boston sent to the partnership a copy of a report dated January 6, 1923, dealing with the partnership's tax liability. This report recomputed the excess profits tax for 1917 in the sum of $734,703.02, which was $2,548.73 less than the original assessment.  Also, the report recomputed the partnership's net income at $4,247.87 less than the original figure.  Schedule 3-a of the report makes the reciprocal corrections in the distributive shares of the partners called for by these minor alterations in the partnership figures.  The same agent on March 6, 1923, also sent to Edwards a copy of a report dated January 9, 1923, explaining adjustments recommended to the Commissioner in respect to the individual income tax liability of Edwards.  The biggest item was a reduction of $28,861.47 in his distributive share of the partnership income, which reduction, the report said, "results from the adjustments made by the Department and examining officer to the net income and to the excess profits tax of the partnership.  See Schedule 3a of the report of Francis Willey & Co. dated Jan. 6, 1923." Referring again to that Schedule 3-a of the report sent to the partnership, it appears that $28,436.69 of this reduction is attributable to the deduction from the partnership income (before calculating the equal distributive shares of the partners therein) of an item of $113,746.75, representing interest paid on the capital contributions of the partners.  The overassessment of the income tax of Edwards for 1917 was fixed at $11,783.58.

The Acting Deputy Commissioner of Internal Revenue wrote to Edwards on July 16, 1923, as follows:

"Sir:  Your claim for the credit of $12,-902.50, individual income tax for the year ended December 31, 1917, to be applied against an unpaid assessment for 1918, has been examined.

"On the basis of evidence now before the Bureau, as disclosed by the report of the Internal Revenue Agent in Charge at Boston, Massachusetts, dated March 6, 1923, your correct tax liability for the year 1917 is found to be $67,868.22, and as $79,-651.80 has been assessed, there has been an overassessment of $11,783.58.

"The claim will, therefore, be rejected for $1,118.92.

"The Collector of Internal Revenue for your District will be officially notified of the adjustment at the expiration of thirty days from the date of this letter, unless prior to that date evidence is furnished showing the adjustment is incorrect.

"Under no circumstances should payment of the amount rejected be made until a bill is received from the Collector of Internal Revenue for your district and remittance should then be made to him."

Subsequently, the Commissioner signed a Schedule of Overassessment in the amount of $11,783.58 authorizing the Collector to make the adjustment, and a Certificate of Overassessment under the name of the Deputy Commissioner was delivered to Edwards.  This certificate states that "the report of the Internal Revenue Agent in Charge at Boston, Massachusetts, dated March 6, 1923, has been reviewed and approved by this office" with a slight exception not now significant.  The certificate also states:

"An audit of your income tax return for 1917, Form 1040 and examination of related claim (if any), indicates that the amount of tax assessed to you for this year was in excess of the amount due:

"Original  assessment,  Serial
   No. 1426576 .............. $79,651.80
Correct tax liability......... 67,868.22
                       
Overassessment ............$11,783.58"

Although the above letter of July 16, 1923, refers to the examination of "your claim for the credit of $12,902.50", the taxpayer could readily tell, from an examination of the documents incorporated by reference, that the indicated overassessment of $11,783.58 comprehended not only an adjustment of the duplicated interest item which was the basis of the claim for credit, but also an adjustment of the partner'

distributive share of the partnership income to correspond with corrections which had been made in the net income and in the excess profits tax of the partnership, the basis of the claim for refund. It is not now asserted, and so far as appears has at no time been asserted, that there was any error in these adjusted calculations. The only interest which the taxpayer now has in the claim for refund is as a peg on which to hang a so-called amended claim filed in 1933, based on a wholly different theory.

On November 3, 1926, the Circuit Court of Appeals for the Second Circuit in Reid v. Rafferty, 15 F.2d 264, held that though the excess profits tax payable by the partnership had already been excluded in computing the partnership net income distributable to the partners, each partner was nevertheless entitled, under Section 29 of the Revenue Act of 1916 as amended by Section 1211 of the Revenue Act of 1917 (40 Stat. 337), to have his individual net income credited with his proportionate share of any excess profits tax imposed upon the partnership. This decision was accepted by the Commissioner in T.D. 3971, promulgated in 1927.

Nothing further happened until January 11, 1929, when one C. R. Nash, as agent for Edwards, wrote to the Commissioner, requesting "that the claim for refund filed by Harold S. Edwards, Boston, Mass., for the Year 1917 be re-opened and reconsidered", inasmuch as the decision in Reid v. Rafferty "was not considered in the adjustment of the petitioner's case", and therefore "the determination previously reached is erroneous". The theory of this letter is that an adjustment of the claim had already been made, but that the claim should be "re-opened" in the light of an intervening court decision.

The Commissioner on May 8, 1929, replied as follows:

"Reference is made to your letter of January 11, 1929, relative to a claim for refund of $66,749.30, individual income taxes paid by Mr. Harold S. Edwards, Boston, Massachusetts, for the year 1917.

"The claim, which was filed in contemplation of a refund due to an overstatement of the distributable share of income from the partnership of Francis Willey and Company, Boston, Massachusetts, was adjusted by the issuance of a certificate of overassessment during the year 1923.

"It is contended that the claim should be reopened in order to permit a refund due to the allowance as a deduction from gross income of a proportionate share of the excess profits taxes paid for the year 1917 by the above-mentioned partnership in accordance with the decision of the United States Circuit Court of Appeals in the case of Reid v. Rafferty which is covered by Treasury Decision 3971.

"The claim for refund pertained to an overstatement of distributable income from the partnership, whereas the present contention pertains to an allowable deduction from gross income which is entirely a separate and distinct issue from that set forth in the claim.

"As the present contention is raised for the first time after the period in which a valid claim upon that basis may be filed, it may not be injected into the original claim for refund in order to permit consideration of an issue otherwise barred by the statute of limitations.

"Accordingly, your request for the reopening of the above-mentioned claim is denied."

On February 6, 1933, Edwards filed with the Collector a formal "amendment" of the original claim for refund dated December 12, 1922, asserting that "Inasmuch as the refund claim filed in 1922 was for the entire amount of tax paid and the same has never been acted on or rejected, the same is hereby amended to cover an adjustment under the Reid v. Rafferty Circuit Court decision". A more elaborate amended claim was filed on June 19, 1933.

The argument is that the claim for refund has never been disallowed or otherwise acted on by the Commissioner; that hence it has been given a new lease on life by Section 3226 of the Revised Statutes as amended by Section 1103 (a) of the Revenue Act of 1932 (47 Stat. 169, 286, 26 U.S.C. §§ 1672–1673, 26 U.S.C.A. §§ 1672–1673);[1] that the claim is open to

1 "Sec. 1103. Limitations on Suits by Taxpayers.

"(a) Section 3226 of the Revised Statutes, as amended, is amended to read as follows:

" 'Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for re-

amendment; that the amendment filed by the taxpayer was a proper one; and that suit can now be brought, under the 1932 Act, at any time before the expiration of "two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance" of the claim.

The filing of a timely claim for refund is a statutory prerequisite to recovery back of taxes alleged to have been illegally collected. Here the original claim was filed within five years after payment of the tax, as permitted by the provision of law then applicable. Section 252, Revenue Act of 1921, 42 Stat. 268. However, the present suit could not have been brought on that unamended claim, because the taxpayer in suing is confined to the scope of the grounds for refund asserted in the claim filed with the Commissioner. United States v. Felt & Tarrant Mfg. Co., 1931, 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025; Real Estate-Land Title & Trust Co. v. United States, 60 S.Ct. 371, 84 L.Ed. ——, Sup.Ct., January 15, 1940; Snead v. El-

more, 5 Cir. 1932, 59 F.2d 312. In the latter case the court said (59 F.2d page 314): "A special ground of illegality duly stated does not justify suit though for the same tax upon a wholly different ground and resting on different facts, nor does a general reservation of rights and claim of illegality in the application for refund afford any help to the tax officer or any benefit to the suing taxpayer."

Since it was too late in 1933 to file a new claim (Revenue Act of 1926, § 284(b) (1), (g), 44 Stat. 66, 67), Edwards was obliged to attempt an amendment of the 1922 claim. This attempt could not succeed if the earlier claim had been disallowed, adjusted, or otherwise disposed of, because there would then be nothing pending to amend. United States v. Memphis Cotton Oil Co., 1933, 288 U.S. 62, 72, 53 S.Ct. 278, 77 L.Ed. 619; Solomon v. United States, 2 Cir., 1932, 57 F.2d 150; New York Trust Co. v. United States, 2 Cir., 1937, 87 F.2d 889, 891, 113 A.L.R. 1287.

It is reasonably clear from the facts above recited that the Commission-

---

fund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates.'

"(b) Suits or proceedings instituted before the date of the enactment of this Act shall not be affected by the amendment made by subsection (a) of this section to section 3226 of the Revised Statutes. In the case of suits or proceedings instituted on or after the date of the enactment of this Act where the part of the claim to which such suit or proceeding relates was disallowed before the date of the enactment of this Act, the statute of limitations shall be the same as provided by such section 3226 before its amendment by subsection (a) of this section."

Revenue Act of 1926, c. 27, 44 Stat. 9, 116:

"Sec. 1113. (a) Section 3226 of the Revised Statutes, as amended, is reenacted without change, as follows:

"'Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail.'

"(b) This section shall not affect any proceeding in court instituted prior to the enactment of the Revenue Act of 1924."

er, in issuing the certificate of overassessment, undertook to make a complete adjustment of the income tax liability of Edwards for the year 1917. The adjustments called for both by the grounds set forth in the claim for credit and the grounds set forth in the claim for refund were fully and accurately made, so far as appears. It is true that the full amount asked for in the claim for refund was not allowed; but the taxpayer asked for a refund of the full amount of tax paid for 1917 not because he thought he was entitled to that sum but to be on the safe side in view of the fact that the ultimate figures for the partnership net income and excess profits tax were still undetermined. If the somewhat artificial argument is made that the claim was allowed only in part (though in fact the Commissioner made the very reciprocal corrections requested), the answer is that the certificate of overassessment may be regarded as a disallowance of the claim for refund beyond the amount allowed, since the statute prescribes no set form for allowance or disallowance in whole or in part of the claims for refund. See Gans S. S. Line v. United States, 2 Cir., 1939, 105 F.2d 955, 956, 957; John F. Jelke Co. v. Smietanka, 7 Cir., 1936, 86 F.2d 470, 473; Pratt & Whitney Co. v. United States, Ct.Cl. 1934, 6 F.Supp. 574; Id., Ct.Cl., 1935, 10 F.Supp. 148, certiorari denied, 1935, 295 U.S. 760, 55 S.Ct. 919, 79 L.Ed. 1702. Cf. United States v. Michel, 1931, 282 U.S. 656, 659, 51 S.Ct. 284, 75 L.Ed. 598. Even if a notice were required of disallowance or other final adjustment of the claim, it may fairly be urged that the certificate of overassessment constituted such notice, if we hold the taxpayer to a reasonably attentive examination of the reports referred to in such certificate. That the taxpayer was under no misapprehension as to what had been done was indicated by the letter of his agent to the Commissioner, dated January 11, 1929, asking that the adjustment be reopened in view of Reid v. Rafferty.

Consequently, after the action taken by the Commissioner in 1923, it seems that there was no longer pending before him any claim for refund which could serve as the basis of a later amendment. The business had been cleaned up. We do not examine more minutely the arguments for the taxpayer in this connection, because it is not necessary to rest the case on the events of 1923.

Assuming, arguendo, that the claim for refund remained alive and pending, despite the Commissioner's action in 1923, the effect of the Commissioner's letter of May 8, 1929, remains to be considered.

That letter may be regarded in either of two ways, neither of which serves the taxpayer's case. First, it may be said to be an explicit notification to the taxpayer that the 1922 claim for refund is no longer pending, having been finally adjusted in the certificate of overassessment theretofore issued. So viewed, the Commissioner's letter would effectively correct any possible ambiguity in the previous notice to the taxpayer attributable in part to the absence from the certificate of any specific reference to the claim for refund, and in part to the Deputy Commissioner's letter of July 16, 1923, referring to the "claim for credit". Second, if need be, the Commissioner's letter of May 8, 1929, may be regarded as in effect a disallowance of any pending claim. The form of the letter is unimportant. The taxpayer is told in unmistakable language that he will take nothing by his claim for refund beyond what has been allowed by the adjustment already made. The letter bears the only significant characteristic of a "disallowance", the firm shutting of the door against administrative relief.

In either view of the letter, the conclusion is the same: That in 1933 there was no pending refund claim upon which an amended claim could be grafted. Even had the old claim been pending there would be a serious question whether, after the lapse of the statutory period for filing claims, an amendment so at variance with the original specific claim would be permitted at all. This in itself is no mean hurdle for the taxpayer to surmount. See United States v. Memphis Cotton Oil Co., 1933, 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; United States v. Henry Prentiss & Co., 1933, 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626; United States v. Factors & Finance Co., 1933, 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633; Bemis Bro. Bag Co. v. United States, 1933, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011; United States v. Andrews, 1938, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Garbutt Oil Co., 1938, 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405; Pink v. United States, 2 Cir., 1939, 105 F.2d 183; New York Trust Co. v. United States, 2 Cir., 1937, 87 F.2d 889, 113 A.L.R. 1287; United States v. Richards, 6 Cir., 1935, 79 F.2d 797;

Seiberling v. United States, Ct.Cl. 1938, 22 F.Supp. 397.

The taxpayer fails, then, because the claim sued on was not filed with the Commissioner within the statutory period.

He fails, also, on another ground. As we have seen, the Commissioner's letter of May 8, 1929, may be considered in substance a disallowance in that it gives notice of a flat unequivocal refusal to consider any further refund. From that point the taxpayer must look to the courts. "The intent of Congress evidently was to make the action of the Commissioner in refusing repayment the starting point from which the right to begin suits should run." John F. Jelke Co. v. Smietanka, 7 Cir., 1936, 86 F.2d 470, 473. The disallowance having thus taken place prior to the enactment of the Revenue Act of 1932, the time for commencing suit is governed by Section 3226 of the Revised Statutes as it stood before the amendment of 1932. Suit had to be brought "within two years after the disallowance" which, at the very latest, would be two years after the Commissioner's letter of May 8, 1929. Edwards did not commence suit until 1935, which was too late.

Thus, we do not reach the merits. It becomes unnecessary to examine the correctness of the rather surprising conclusion in Reid v. Rafferty, that the partner is entitled in effect to the benefit of a double deduction of his proportionate share of the excess profits tax payable by the partnership of which he is a member.

In each case the judgment of the District Court is affirmed.