

District of electricity which it needed for its own purposes. The plaintiffs claim only the rights to renewals which would have given them such electricity, if any, as was surplus to Water District's needs after 1954, and was within the amounts set in their original contracts.

Our conclusion is that the plaintiffs were entitled, under the statute, to renewals of their contracts with the limitations which they concede, and that the Government violated their statutory rights when it denied them renewals and refused to give them the electrical energy to which renewals of their contracts would have entitled them.

The plaintiffs are entitled to recover, and judgment will be entered to that effect. The amounts of the judgments will be determined in further proceedings under Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.

**GENERAL OUTDOOR ADVERTISING CO., Inc.,**

v.

**The UNITED STATES.**

**No. 270-52.**

United States Court of Claims.
March 6, 1957.

Spaulding Glass, Chicago, Ill., for plaintiff.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew F. Oehmann, Washington, D.C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff sues for an alleged overpayment of excess profits taxes. It seeks to carry over to the taxable years 1944 and 1945 an unused excess profits credit to which it was entitled for the years 1941, 1942 and 1943. This excess profits credit was computed upon the basis of its invested capital.

It alleges that the defendant erroneously computed the good will which it was entitled to include in its equity invested capital, in that it deducted from so-called "positive" good will of $3,217,700 so-called "negative" good will in the amount of $2,260,300. Plaintiff alleges that it was erroneous to deduct any amount from the "positive" good will found by the Commissioner of Internal Revenue, the amount of which plaintiff does not contest. The propriety of this deduction is the only issue presented by the petition on the amount of good will to be included. It was the only basis for the claim for refund, except one that has now been abandoned.

Plaintiff also alleges that the defendant put an erroneous valuation on its land and buildings.

Defendant denies the allegations of the petition with reference to the valuation of land and buildings and affirmatively avers that the correctness of the valuations placed upon them cannot be prosecuted in this action because a claim for refund based thereon was not filed within the time allowed by statute.

Thus, there are two substantive issues presented, to wit, the proper valuation of good will and of lands and buildings, and the subsidiary issue of whether or not the amended claims for refund, which first asserted an undervaluation of land and buildings, can be considered proper amendments of the original claim for refund, which was filed in time.

Plaintiff was formed, effective February 26, 1925, by the consolidation of the Thomas Cusack Company and its subsidiaries and the Fulton group of companies. Plaintiff issued its stock partly in exchange for certain shares of stock of the Thomas Cusack Company and of each company in the Fulton group, and partly for cash and, in addition, it acquired for cash certain stock of the subsidiary companies.

The Commissioner of Internal Revenue, in computing the good will of the companies acquired by plaintiff, capitalized at 20 per cent the earnings of each company in excess of 10 per cent of the value of their tangible assets. This resulted in a total figure of $3,-217,700.00, which the Commissioner of Internal Revenue thought plaintiff was entitled to include in its equity invested capital on account of good will. He, however, reduced this amount by $2,-260,300 on account of what he considered "minus" or "negative" good will of those companies whose net incomes were less than 10 per cent of the value of their tangible assets. In doing so, the Commissioner of Internal Revenue purported to follow A. R. M. 34; 2 C. B. 31 (1920), which was concerned with "methods of determining value as of March 1, 1913, of intangible assets."

Plaintiff's main contention is that neither this memorandum nor any other provision of law gave any authorization for reducing the "positive" good will of some of the subsidiary companies, whose income was more than 10 per cent of the value of their tangible assets, by the "minus" good will of other subsidiary companies, whose income was less than 10 per cent of the value of their tangible assets. This is the only issue presented on the amount to be included in invested capital on account of good will. Plaintiff did not complain, either in its petition or in its claim for refund, of the method employed by the Commissioner of Internal Revenue in determining the good will of companies earning more than 10 per cent of the value of their tangible assets; it complained alone of the deduction of "minus" or "negative" good will of companies

earning less than 10 per cent of their invested capital.

Defendant does not admit that plaintiff acquired any good will as a result of the consolidation. It says that the parties at the time of the consolidation expressly excluded good will in determining the number of shares of plaintiff's stock to be issued for the stock of the companies it acquired and, hence, it is not entitled to include anything in invested capital for good will. But in any event, it says, plaintiff is not entitled to more than the amount found by the Commissioner.

Good will is an intangible, illusory, sometimes an ephemeral thing. Sometimes it has great value. But, the determination of that value is exceedingly difficult. Not infrequently the Commissioner of Internal Revenue uses the rule of A. R. M. 34 for this purpose. Under this rule he capitalizes earnings in excess of 10 per cent, and attributes the excess earnings to good will, although he recognizes that the excess may be attributable to other causes, and although some companies currently earning less than 10 per cent may have substantial good will. A. R. M. 34 is a rule of thumb by means of which some fair approximation can be reached of what part of plaintiff's income is attributable to the good will it has been able to build up in the trade. But, at best, it is only a rough approximation.

Ordinarily, the initial invested capital of a company is to be determined by the value of property paid in for its stock. This was the stock of the companies plaintiff acquired. The only basis for valuing their stock is the value of the assets of each, since there is no evidence of market value. The Commissioner of Internal Revenue thought that since some of these companies earned substantially more than 10 per cent of their invested capital, some amount ought to be included for good will. But he thought the plaintiff's good will ought to be determined on the basis of the situation after the acquisition of all of the companies.

It would be hard to find fault with this, although theoretically he should have considered each company separately, found the value of the stock it transferred for plaintiff's stock, and included this in plaintiff's invested capital. But we are dealing with that illusory, shadowy, intangible thing called good will,— what amount is plaintiff entitled to include in its invested capital on account of the good will it enjoyed as the result of its acquisition of the stock of each of these companies. In such circumstances, it would seem proper to look at plaintiff's situation after the consolidation had been completed, in determining the value of everything it had acquired.

This would mean that we should take the aggregate value of all the tangible assets behind the stock of each company acquired by plaintiff and compare that aggregate with the aggregate income, and capitalize the excess over 10 per cent. This is what the Commissioner of Internal Revenue did in effect.

What he did in fact was to capitalize the earnings in excess of 10 per cent of each company. This he called positive good will. Then he capitalized the deficit under 10 per cent of each company earning less than 10 per cent. This he called negative good will. He then reduced the positive good will by the negative good will, and allowed plaintiff the balance as invested capital. It is obvious that the Commissioner arrived at the same result as if he had taken 10 per cent of the aggregate invested capital and capitalized the excess of the aggregate income over this 10 per cent.

Such a method seems to us just and fair under all the circumstances. It reflects what plaintiff received as a result of the consolidation.

There is testimony in the record of certain so-called expert witnesses who testified to the value of plaintiff's good will, but we find the computation made by the Commissioner of Internal Revenue more satisfying than this expert testimony. We think it more nearly approximates the actual value.

Besides, plaintiff in neither its petition nor in its claim for refund contested the

**166**

valuation of the good will of the companies earning more than 10 per cent as determined by the Commissioner of Internal Revenue.

Furthermore, Mr. Hossack, of the American Appraisal Company, on whose testimony plaintiff chiefly relies, assumed increased earnings in the future, based upon the trend in past years. On the contrary, the valuation of the Commissioner of Internal Revenue is based on actual experience, and not on supposition of what may happen in the future. "The lamp of experience," we think, sheds the best light to guide our feet.

We are of opinion that the determination of the Commissioner of Internal Revenue is correct under the circumstances.

■ The other issue concerns the valuation of the land and buildings.

The Trial Commissioner finds that the Commissioner of Internal Revenue was not justified in reducing the valuation of the land and buildings placed on them by plaintiff. Defendant takes no exception to this finding. We have, therefore, adopted it. The valuations were those of the American Appraisal Company and the Ford, Bacon & Davis Company, reputable, nationally-known and recognized appraisal companies. These reductions must be restored. Plaintiff is entitled to have its excess profits credit computed on this basis.

But, the defendant asserts that the amendments of April 3, 1950 and April 14, 1950 first asserted an undervaluation of land and buildings, and that they cannot be considered as an amendment of the original claim for refund, which was based alone upon an undervaluation of good will, and, hence, it says, that plaintiff is entitled to recover only those tax payments which were made within two years of the filing of these amended claims for refund.

We are of opinion that the so-called amended claims for refund were not in fact amendments of the original claim, but injected new issues and that, therefore, the defendant is correct in saying that only those payments made two years

prior to the filing of these amended claims can be recovered in this litigation, or so much thereof as exceeds the amounts which would have been due if the valuation of the land and buildings had not been reduced by the Commissioner of Internal Revenue. Judgment will be entered accordingly. The amount of the recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A. If the parties desire to file a stipulation showing the amount due, computed in accordance with this opinion, they may have thirty days in which to do so.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

LITTLETON, Judge, dissents.

**PHILIP MORRIS & CO., Ltd., Incorporated to the use of ÆTNA INSURANCE COMPANY**

v.

**The UNITED STATES.**

**P. LORILLARD COMPANY, Incorporated to the use of ÆTNA INSURANCE COMPANY**

v.

**The UNITED STATES.**

Nos. 683–53, 684–53.

United States Court of Claims.
March 6, 1957.

