**FIRST NATIONAL BANK OF MONT-
GOMERY, Executor of the Estate
of Algernon Blair**

v.

**UNITED STATES.**

**No. 545–57.**

United States Court of Claims.

July 15, 1960.

H. Cecil Kilpatrick, Washington, D. C., for plaintiff. Fred S. Ball, Jr., and Ball & Ball, Montgomery, Ala., were on the brief.

Robert Livingston, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland and Myron C. Baum, Washington, D. C., were on the brief.

PER CURIAM.

This case in which plaintiff seeks the recovery of an alleged overpayment of Federal estate taxes was referred pursuant to Rule 45(a) to Mastin G. White, a trial commissioner of this court, 28 U.S.C., with directions to make findings of fact and to recommend conclusions of law which the commissioner has done in a report filed November 13, 1959.

The court, having considered the evidence, the briefs and argument of counsel and being in agreement with the conclusions reached by the commissioner, adopts his opinion and findings as here-

inafter set forth as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover and its petition will be dismissed.

It is so ordered.

### Opinion of the Commissioner

This case involves the application of Section 910 of the Internal Revenue Code of 1939, 26 U.S.C. § 910 (53 Stat. 138), providing as follows:

"All claims for the refunding of the [estate] tax imposed by this subchapter alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner [of Internal Revenue] within three years next after the payment of such tax. The amount of the refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim, or if no claim was filed, then during the three years immediately preceding the allowance of the refund." [1]

The plaintiff bank, as executor of the estate of Algernon Blair, deceased, filed the estate tax return with the District Director of Internal Revenue at Birmingham, Alabama, on June 15, 1953. The return reported a net estate tax of $504,313.79 payable to the United States, and this sum was paid with the return. However, the return contained errors prejudicial to the decedent's estate; and, as a consequence, the proper amount of the estate tax was overpaid.

One of the errors related to the decedent's Federal income tax liability for 1951. The estate tax return listed as an asset of the decedent's estate an "Overpayment of 1951 Federal Income Tax on return of Algernon and Adele B. Blair [the decedent's wife]," in the amount of $5,008.60. Actually, no overpayment of the decedent's Federal income tax liability for 1951 had been made at the time of his death. On the contrary, there was a net Federal income tax lia-

bility for 1951 in the amount of $72,-991.40 due and unpaid at the time of the decedent's death.

Another error related to the decedent's income tax liability to the State of Alabama for 1951. The estate tax return included among the decedent's debts one in the amount of $639.44 representing the "1951 Alabama Income Tax of Algernon Blair." The actual amount of the 1951 income tax due the State of Alabama by the decedent at the time of his death was $2,139.44, rather than $639.44.

The true facts respecting the decedent's Federal and Alabama income tax liabilities for 1951 at the time of his death were known to the plaintiff bank when the estate tax return was filed on June 15, 1953, but such facts were overlooked in connection with the preparation and filing of the return.

An audit of the estate tax return was undertaken by an Internal Revenue Agent on March 10, 1954. All the pertinent documents were furnished to the agent for examination by personnel representing the plaintiff bank. Among these documents was a balance sheet showing the condition of the decedent's financial affairs as of the time of his death on March 14, 1952. This balance sheet showed (among other things) that, at the time of the decedent's death, he owed $72,991.40 to the United States as Federal income tax for 1951 and $2,-139.44 to Alabama as State income tax for 1951. However, no one representing the decedent's estate specifically called these particular matters to the agent's attention, and he did not notice them during the course of his investigation.

On June 5, 1956, the plaintiff bank filed with the District Director of Internal Revenue at Birmingham a claim for an estate tax refund on behalf of the decedent's estate. This claim set out the full amount of the estate tax previously paid as the "Amount to be

---

1. A similar 3-year period of limitation would be applicable to this case under Section 6511(a) of the Internal Revenue Code of 1954, as amended (26 U.S.C., 1958 ed., § 6511(a)).

refunded." However, there was attached to the formal claim a supporting statement which indicated that the claim was actually based upon expenses, not yet definite as to amount, that would be payable in winding up certain business transactions in which the decedent had been engaged at the time of his death. The supporting statement identified the particular transactions that were involved in the claim, and explained them in some detail. The supporting statement went on to say that "This claim is, therefore, filed for the full amount of the entire estate tax paid as a protective claim and when the correct amount of the foregoing items has been ascertained, claimant will notify the Commissioner that the claim may be reduced accordingly." The decedent's Federal and Alabama income tax liabilities for 1951 were not referred to in the supporting statement as providing any basis for the claim, although, as previously indicated, the true facts respecting these items were known to the plaintiff bank long before the claim for refund was filed.

Sometime between June 14 and July 9, 1956, the plaintiff bank endeavored to reconcile its own accounts pertaining to the decedent's estate with the estate tax return. During this process, the errors that had been made in the return relative to the decedent's Federal and Alabama income tax liabilities for 1951 were noted. Within a few days, these errors were orally called to the attention of a local representative of the Internal Revenue Service. However, this was more than 3 years after the filing of the estate tax return and the payment of the estate tax.

Subsequently, on October 19, 1956, the plaintiff bank filed with the District Director of Internal Revenue at Birmingham a further claim for an estate tax refund on behalf of the decedent's estate. This claim again set out the full amount of the estate tax previously paid as the "Amount to be refunded." However, the statement in support of the claim indicated that the claimant was actually seeking a refund of $38,-737.52 based upon a number of "additional deductions" to which the claimant was allegedly entitled in connection with the estate tax return. The "additional deductions" covered matters that had been mentioned in the supporting statement attached to the original claim for refund, and also items relating to the decedent's Federal and Alabama income tax liabilities for 1951 at the time of his death.

The plaintiff's claim for refund was thereafter considered by the Commissioner of Internal Revenue. On August 6, 1957, the Commissioner allowed the claim for refund in so far as it was based upon claimed additional deductions other than those relating to the decedent's Federal and Alabama income tax liabilities for 1951. It was the opinion of the Commissioner that the portion of the claim based upon the decedent's Federal and Alabama income tax liabilities for 1951 was not allowable because these matters had not been asserted in the original claim for refund and because the second claim for refund had been filed too late to receive consideration.

■ The Supreme Court has held that where a claim for a tax refund has been filed with the Internal Revenue Service within the prescribed period of limitation but fails to state the grounds upon which the refund is demanded, it can subsequently be amended by specifying the grounds at any time before the claim in its original form has been finally rejected, even though the amendment is filed after the expiration of the period of limitation. United States v. Memphis Cotton Oil Co., 1933, 288 U.S. 62, 71, 53 S.Ct. 278, 77 L.Ed. 619. On the other hand, the decided cases make it plain that where a timely claim for a tax refund asks for the repayment of a definite sum upon a specific ground, the claim cannot be amended after the expiration of the period of limitation so as to ask for a refund on a ground different from that asserted in the original claim. United States v. Andrews, 1938,

302 U.S. 517, 524, 58 S.Ct. 315, 82 L.Ed. 398; Winchester Mfg. Co. v. United States, 1939, 25 F.Supp. 102, 88 Ct.Cl. 89, 104, certiorari denied 308 U.S. 621, 60 S.Ct. 298, 84 L.Ed. 518.

■ The present case does not fall squarely under either of the two lines of authorities mentioned in the preceding paragraph. On the one hand, as previously indicated, the original claim for refund, which was filed within the 3-year period of limitation, set out the full amount of the tax theretofore paid as the "Amount to be refunded." On the other hand, the supporting statement, which accompanied the claim and was a part of it, showed that the claim was actually based upon the deduction from the decedent's gross estate of expenses, then indefinite as to amount, that would be payable in winding up certain specified business transactions. The supporting statement further declared that "when the correct amount of the foregoing items has been ascertained, claimant will notify the Commissioner that *the claim may be reduced accordingly*." [Emphasis supplied.]

If the original claim as a whole is carefully considered, the conclusion seems inescapable that the plaintiff was asking for a refund only of the amount determined to be appropriate upon the basis of the allowance of the items of expense mentioned in the supporting statement. That being so, it necessarily follows that when the plaintiff, after the expiration of the 3-year period of limitation, asked that additional deductions relating to the decedent's Federal and Alabama income tax liabilities for 1951 be allowed in computing the amount of the refund, this was not an amendment clarifying the original claim, but a new and different claim filed too late because of the expiration of the 3-year period of limitation. United States v. Andrews, supra, 302 U.S. at page 520, 58 S.Ct. at page 317; United States v. Garbutt Oil Co., 1938, 302 U.S. 528, 535, 58 S.Ct. 320, 82 L.Ed. 405; Insuranshares and General Management Co. v. United States, 1941, 38 F.Supp. 835, 93 Ct.Cl. 643, 657; General Outdoor Advertising Co., Inc. v. United States, 1957, 149 F. Supp. 163, 137 Ct.Cl. 607, 612–613, certiorari denied 355 U.S. 891, 78 S.Ct. 264, 2 L.Ed.2d 190.

The fact that the original claim was still pending before the Commissioner of Internal Revenue when the expanded claim was filed is immaterial. Seiberling et al. v. United States, 1938, 22 F. Supp. 397, 87 Ct.Cl. 611, 630, certiorari denied 307 U.S. 634, 59 S.Ct. 1031, 83 L.Ed. 1516; Insuranshares and General Management Co. v. United States, supra, 38 F.Supp. at pages 841–842, 93 Ct.Cl. at pages 657–658.

It is also immaterial that, prior to the expiration of the 3-year period of limitation, the files of the Internal Revenue Service contained data showing the actual amounts of the decedent's Federal and Alabama income tax liabilities for 1951 at the time of his death. Angelus Milling Co. v. Commissioner, 1945, 325 U.S. 293, 299, 65 S.Ct. 1162, 89 L.Ed. 1619.

■ It is unfortunate that the errors in the estate tax return relative to the decedent's Federal and Alabama income tax liabilities for 1951 were not noted and reported to the Internal Revenue Service in a proper claim for refund prior to the expiration of the 3-year period of limitation. However, the period of limitation for the filing of claims for tax refunds is prescribed by the Congress, and the requirement cannot be waived by the Commissioner of Internal Revenue or by this court. United States v. Garbutt Oil Co., supra, 302 U.S. at page 535, 58 S.Ct. at page 323; Insuranshares and General Management Co. v. United States, supra, 38 F.Supp. at page 842, 93 Ct.Cl. at page 658.

For the reasons set out above, it is my opinion that the petition in this case must be dismissed.